## Aetna Casualty & Surety Co. et al. v. Petty et al.

April 30, 1940.

Ira D. Smith, Judge.

White & Clark and S. E. Bevins for appellants.

W. E. Rogers, Jr., and Trimble & Trimble for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment of the Christian circuit court, affirming an award of the Workmen's Compensation Board.

Upon an application by appellee, John D. Petty, to the Compensation Board for compensation for injuries

received while working for appellant, a referee award was made him.

The appellant employer applied for a review by the full board, which was granted, and the referee's findings of fact and award were approved and adopted by it.

Appellant thereupon filed in the circuit court a petition, seeking an appeal and review of the board's findings and award.

The cause coming on for hearing, the court rendered a judgment approving and affirming the board's factual findings and award to claimant, with costs incurred both in that court and before the board.

The employer has appealed, insisting upon a reversal of this judgment upon the grounds: (1) That the appellee was not, at the time of receiving the injuries for which he was awarded compensation, an employee of the partnership, but was working for it as an independent contractor; and (2) that the trial court's judgment was erroneous in affirming the full amount of compensation awarded by the board, in that same embraced a substantial allowance for injuries not shown by the evidence to have been sustained.

We will now undertake to dispose of these grounds urged for reversal of the judgment in the order presented.

Our decision in regard to the first of these grounds must turn upon our conclusion reached as to what was the relationship status of the appellee and his employer, created under the working arrangement made and existing between them on August 30, 1937, the day appellee was injured by a spraying machine accident, arising out of and in the course of the work he was engaged in doing for his employer at its plant.

Whether the appellee is entitled to receive the compensation, awarded him for his injuries, found sustained as an employee, under the provisions of the Compensation Act, must depend and turn upon our determination of whether or not he was, at the time injured, working for the appellant company as its employee or as an independent contractor.

The Compensation Board, upon the evidence intro-

duced and the testimony given by both the claimant and Mr. Hancock, the member of the partnership employing him, found that he was, at the time injured, an employee of the appellant company and accordingly awarded him compensation therefor, as coming within the protection of the remedial provisions of the Compensation Act, and the board's findings and award were affirmed on appeal by the circuit court.

It appears that in practically every jurisdiction in which this question has been considered, as to whether or not an independent contractor comes within the protection and purview of the Workmen's Compensation Act, or statutes of such description, the position has been taken that independent contractors are outside their purview.

The fact of the claimant's employment, whether as a servant or as an independent contractor, when it is put in issue on a hearing before the board entrusted with the duty of awarding compensation, must be established by common law evidence sufficient to support a finding by the jury that he was employed on such footing, and the question of primary and determining importance before the board called upon to make the compensation award is whether or not the status of the plaintiff, or claimant, at the time he received his injuries was that of an independent contractor, or that of an employee of the defendant.

This rule is thus stated in 71 C. J., section 181, page 445:

"In the absence of a statutory provision to the contrary, an injured person who is not an employee, but an independent contractor for the work, is not within the scope of a compensation act; and when it appears that the parties have contracted for the performance of work under circumstances which the courts have determined constitute the worker an independent contractor, an industrial commission has no further powers and must dismiss the claim." See also 28 R. C. L., section 57, page 762; Diamond Block Coal Co. v. Sparks et al., 209 Ky. 73, 272 S. W. 31; Wright et al. v. Wilkins et al., 222 Ky. 144, 300 S. W. 342.

Such, in harmony with this general rule, is the holding of this court, that an independent contractor is not

an employee, as defined in the Workmen's Compensation Act, section 4880, and therefore not insurable against personal injuries to himself by that act, while carrying out his independent contract.

There is no substantial conflict or dispute as to the facts of the contract of employment here made by appellee with Mr. Hancock, the member of the partnership employing him, and therefore the question on the facts is one of law and the finding of the board under such circumstances is one of law which may be reviewed by this court. Diamond Block Coal Co., supra; Bates & Rogers Construction Co. v. Allen, 183 Ky. 815, 210 S. W. 467; Rusch v. Louisville Water Co., 193 Ky. 698, 237 S. W. 389; Raponi v. Consolidation Coal Co., 224 Ky. 167, 5 S. W. (2d) 1043.

This evidence heard by the board, and by the trial court reviewing it, was found and held sufficient to show that appellee was when injured working for the appellant as an employee, within the meaning of the Compensation Act, and therefore was entitled to receive compensation therefor as by it provided.

There being, as stated supra, no substantial conflict in this evidence in reference to what was the employment or relationship between the parties, under such circumstances the finding of the board was a finding of law, which we are here called upon to review and determine whether its finding was sustained by evidence of probative value.

Black Mountain Coal Corporation v. Strunk, 263 Ky. 234, 92 S. W. (2d) 66.

The testimony of the claimant, Petty, as to the working arrangement or contract made between him and Mr. Hancock, a member of and representing the appellant partnership when employing him, is, briefly stated, that he, during all the times herein mentioned, lived in Hopkinsville, Ky., where was also located and operated the appellant company's business; that he had for some thirteen years been there employed as a watchman at the plant of the American Snuff Co., where, in such capacity, he usually worked between the hours of three and eleven P. M., leaving him free, between the closing and beginning time of such work, to do such other work as he desired to do.

He stated that on August 26, 1937, Mr. Hancock came to his house and asked "would I help him. I told him yes. He said, 'You had better get some tools, I have a whitewashing machine that needs fixing. I want to whitewash a building, and you might have to go into it;'" that he got the tools and started to work on August 26; that before he commenced work, Mr. Hancock said that the company was operating under the Workmen's Compensation Act and suggested that he sign its compensation register, which he did; that he was asked what he charged or wanted for his work and that he told him 50c an hour, at which rate Mr. Hancock paid him for the work he did; that again, on August 30, Mr. Hancock came after him and told him that the spraying machine had been again broken and asked him to help him repair it; that he and Mr. Hancock worked on the machine together; that Mr. Hancock said, "I have to go away, I will be back directly;" that he put the machine together, but that it would not pump; and that, as he was taking it apart to clean it out, not knowing there was any pressure in it, it blew up; that the released air pressure blew lime into his eyes, resulting in the loss of the sight of his right eye, injury to his left eye and the later enucleation or removal of the right eyeball; that the vision of his left eye was so impaired by the injury, that he is compelled to wear glasses in order to have normal vision in that eye; that by the use of glasses, his vision seems to be normal, but that he can't see as well as he did before the accident.

He stated that at the time of the accident he was making 50c an hour under the agreement had with Mr. Hancock and was supposed to work 48 hours per week; that for some days following his injury, he was totally blind and disabled and for some two or three months was paid by Mr. Hancock a weekly compensation of $13.50.

He further stated that after repairing the spraying machine on August 26, Mr. Hancock told him he would have to wait until more material came before "we whitewash any more;" also, that after fixing the machine on the 26th, "we whitewashed some;" and that after finishing his work at the plant on August 26, he heard nothing more from Mr. Hancock until the 30th, when Mr. Hancock again asked him to come and help him, saying,

"They have broken the machine, and we want to start work, that stuff has come;" and that when he went back to work on August 30, he and Mr. Hancock had an agreement as to what he would pay him, which was 50c an hour.

Mr. Hancock, the member of the firm who employed Mr. Petty, testified that his company was eligible to and did operate under the Workmen's Compensation Act and, as required by it, kept a register for its employees to sign when they hired them; that he employed the appellee, Mr. Petty, on August 26 and thought it advisable to have him sign the register, as was the company's practice with its employees, and that he signed it. Further he stated that Mr. Petty was, when injured, helping him fix a broken whitewash spray; that he felt free, under his contract of employment with him, to have him do any other kind of work around the plant; that he considered Mr. Petty to be an employee of the company and working for it at the time he was injured on August 30 and that he was being paid wages at the rate of 50c an hour; that his contract with Mr. Petty was that he was to be paid 50c an hour and that he was to work for the company; that he was to do any kind of work he (Mr. Hancock) wanted him to do; that Mr. Petty could not come and go when he got ready, nor do the job assigned him like he (Petty) wanted to do it, that he supervised any job anybody did for him; that Mr. Petty was injured while on appellant's premises and while working for it.

The finding of the board on this evidence was:

"1. That plaintiff was injured while in the employ of defendant.

"2. Defendant had due and timely notice of plaintiff's accident and injury.

"3. That said accident arose out of and in the course of his employment.

"4. That average weekly wages of plaintiff were such as to entitle him to maximum compensation benefits.

"5. That plaintiff's injury resulted in the removal of the right eyeball and the accompanying impairment to his face; also injuries to the vision of the left eye."

As stated supra, the board's finding was one of law, where based upon undisputed facts, and as such is reviewable by us.

The distinction between the two relationships of employer and employee and employer and independent contractor is one that has long been recognized and established by law, the latter relationship existing where one contracts with another to do a specific piece of work.

The distinction between the two relationships (that of employer and employee and employer and independent contractor) is to be recognized by the difference of their tests and definitions.

In section 57, 28 R. C. L., page 762, it is said that: "The distinction between the relationships has long been recognized by the law, and a rule of definition has met with general acceptance. One who contracts with another to do a specific piece of work for him, and who furnishes and has the absolute control of his assistants, and who executes the work entirely in accord with his own ideas, or with a plan previously given him by the person for whom the work is done, without being subject to the latter's orders in respect of the details of the work, with absolute control thereof, is not a servant of his employer, but is an independent contractor. This is the common law definition, and it embodies the rule applicable under the statutes, inasmuch as the acts do not attempt any definition. The test is to be found in the fact that the employer has or has not retained power of control or superintendance over the contractor or employee. An independent contractor, then, as defined above, is not entitled to be compensated under the statute, for the reason that he is not a workman."

The employer in the instant case testified that power of control over the appellee and the manner of doing the work assigned him was reserved by him and, further, that he was not free to come and go as he pleased.

In view of such being the relationship of the parties under the terms of their employment contract, as was shown by the testimony of the parties to the contract, we conclude that the board's finding, that appel-

lee was appellant's employee at the time injured, was amply sustained by probative evidence and that, such being the status of claimant, he came within the protection of the Workmen's Compensation Act, authorizing the board to award him compensation for the personal injuries he sustained by the accident arising out of and in the course of his employment.

Appellant's next and final objection is that the board had no authority to make an award for a supposed injury or one which is not by the record shown to have been suffered.

Certainly this pragmatic declaration is not to be gainsaid nor argument urged against the reasonableness and legal verity of such pronouncement.

However, we view same as directed at the board's action in awarding a larger amount of compensation to appellee for his eye loss and injury than appellant conceives is shown to have been suffered by him.

The board's finding of fact as to the extent of the injury suffered is that "plaintiff's injury resulted in the removal of the right eyeball and the accompanying impairment to his face; also injuries to the vision of the left eye."

There was before the board making this finding not only the testimony of the specialists who had treated appellee for his eye injury, involving at first total blindness, then loss of sight in his right eye, which was removed, and impairment of vision in his left eye, but also the appellee himself, whose appearance furnished it evidence as to whether, as a result of the removal of his right eye, he suffered such disfigurement as served to impair his future occupational opportunities.

The board, upon this evidence, found that appellee had sustained permanent partial disability by disfigurement, which will result in the impairment of appellee's future usefulness or occupational opportunities.

Section 4899, providing specific compensation for certain therein enumerated injuries, directs that for "the total and permanent loss of the sight of an eye" compensation should be paid claimant at the rate of "(65%) of the average weekly wages during 100 weeks."

By a further provision of this same section, it is provided that:

"In all other cases of permanent partial disability, including any disfigurement which will impair the future usefulness or occupational opportunities of injured employee, compensation shall be determined according to the percentage of disability, taking into account, among other things, any previous disability, the nature of the physical injury or disfigurement, the occupation of the injured employee and age at the time of injury; the compensation, paid therefor shall be * * * (65%) of the average weekly earnings of the employee, but no less than * * * ($5.00) nor more than * * * ($12.00), multiplied by the percentage of disability caused by the injury, for such period as the board may determine, not exceeding 335 weeks nor a maximum sum of * * * $4,000.00)."

By section 4935, Kentucky Statutes, it is provided that:

"An award or order of the board * * * shall be conclusive and binding as to all questions of fact. * * * No new or additional evidence may be introduced in the circuit court except as to the fraud or misconduct of some person engaged in the administration of this act and affecting the order, ruling or award, but the court shall otherwise hear the cause upon the record or abstract thereof as certified by the board and shall dispose of the cause in summary manner, its review being limited to determining whether or not:

"(1) The board acted without or in excess of its powers.

"(2) The order, decision or award was procured by fraud.

"(3) The order, decision or award is not in conformity to the provisions of this act.

"(4) If findings of fact are in issue, whether such findings of fact support the order, decision or award."

It is not here contended that anyone engaged in

the administration of the act was guilty of fraud or misconduct. Such being true, the board's findings of fact can not be reviewed or set aside, there being evidence to support them.

The appellee insists that his injuries suffered, consisting of the loss of his right eye, his disfigurement resulting therefrom (which served to impair his future usefulness and occupational opportunities), and the permanent partial impairment of the vision of his left eye, authorized the board to award him a larger amount than that provided by section 4899 for the loss of the sight of an eye and that it properly determined, upon the evidence submitted, that he was entitled to recover therefor, as expressly in the latter part of said section provided, 65% of his average weekly earnings (but not more than $12), multiplied by the percentage of disability caused by the injury, which the board found amount to 75%.

The board's ruling, making such allowance for injury received in addition to the specific injury of "loss of the sight of an eye," was upheld (as authorized by the act in such case) in Nelson v. Kentucky River Stone & Sand Co., 182 Ky. 317, 206 S. W. 473, 475, the court there saying:

"Looking at our act, we find that it provides compensation at a certain rate for 'the loss of a thumb,' the 'loss of a first finger,' the 'loss of a hand,' the 'loss of an arm,' the 'loss of a foot,' the 'loss of a leg,' etc., thus showing that the compensation therein provided for was confined to the loss of the particular member named. When it deals with the eye, however, it does not provide for compensation for the loss of the eye itself, but solely for the 'loss of the sight of an eye.' If it be true, and there is no reason to doubt the soundness of the rule, that the purpose of the Legislature was to confine the fixed compensation provided for specific injuries to those injuries and no others, and that the compensation allowed for a specific injury was not payable for a less injury, the rule should work both ways, and the compensation provided for a particular injury should not be held to include a greater injury. Here, the employé lost, not only the sight of his eye, but the eye itself. His injury therefore was greater

than the mere loss of the sight of the eye. That being true, his case does not fall within the schedule making compensation solely for the loss of the sight of an eye, but falls within the general provision, supra, awarding compensation 'in all other cases of permanent partial disability,' etc.''

Much the same question was before the court in the very recent case of Black Mountain Corp. v. Adkins, 280 Ky. 617, 133 S. W. (2d) 900, wherein the court upheld the board's award of compensation to claimant for disability to his body resulting from an injury to a limb, which was larger in amount than he would have received for a severance of the limb itself.

The board's award of compensation here made appellee under the provisions of section 4899, Kentucky Statutes, was for a larger amount than that provided specifically for the ''loss of the sight of an eye,'' being based upon the further provision of the act that an allowance of compensation might also be made the injured claimant in cases of permanent partial disability, ''including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee.''

There was ample probative evidence sustaining the board's finding of fact that the appellee had suffered, as the result of his injury, such disfigurement as would impair his future usefulness and occupational opportunities, for which it made him the additional compensation allowance by this section of the act authorized, and we are therefore unauthorized to disturb it.

Judgment affirmed.