## Joseph W. Greathouse Co. et al. v. Yenowine.

March 22, 1946.

As Extended on Denial of Rehearing May 3, 1946.

Robert F. Vaughan for appellants.

Edrington & Redmon for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

The Jefferson Circuit Court entered a judgment reversing an order of the Kentucky Workmen's Compensation Board, wherein the Board had dismissed the appellee's claim for compensation. The employer, Joseph W. Greathouse Company, appeals.

The appellee, Leonard Yenowine, an employee of the Joseph W. Greathouse Company, claimed to have sustained an accidental injury at the plant of his employer on or about December 9, 1942.

On December 23, 1942, plaintiff signed a Form SF-5 issued by the Workmen's Compensation Board, which is a standard form for final compensation receipt, in which he acknowledged receipt of $12.84 covering a period of disability from the date of the accident to the 22nd day of December, 1942. He then returned to work on December 23, 1942.

On October 26, 1943, he filed application for adjustment of his claim on Form 11. The case was set down for hearing before a referee of the Board on January 27, 1944. Defendant objected to the proceeding, believing that the plaintiff had no right to proceed de novo, and being of the further belief that his remedy was limited by KRS 342.125. This objection was referred to the Full Board for final determination.

On March 21, 1944, the Board rendered an opinion on the question referred to it, wherein it held in substance that since the final compensation settlement receipt had never been approved by the Board, the agreement to pay compensation was not closed and it was not,

therefore, incumbent on the plaintiff to proceed under KRS 342.125. It overruled the defendants' objection and re-referred the cause to the referee with instructions to proceed in accordance with the original order.

The matter was then heard before L. Edmund Huber, Referee, who rendered an opinion and award, in which he found that the plaintiff suffered temporary total disability on December 9, 1942, for which he had been compensated by the defendant, and that from and after the 7th day of May, 1943, he had suffered a condition of permanent total disability and was entitled to compensation at the rate of $15 per week for a period of 500 weeks, subject to a credit of the amount theretofore paid.

The defendant company moved for a Full Board review of the opinion and award rendered by the referee. On November 14, 1944, the Full Board found that the employee, by the evidence submitted, failed to estalish that he sustained a personal injury by accident arising out of and in the course of his employment; that he is not entitled to compensation therefor, and ordered and adjudged that the judgment and award of the referee be set aside and held for naught.

Petition was then filed by the plaintiff for a review by the Jefferson Circuit Court. Upon hearing and submission, the court adjudged that the plaintiff was totally and permanently disabled and that the opinion of the Board should be set aside and held for naught, and that the plaintiff should recover for 500 weeks at $15 per week with 6% per annum for each past due weekly payment, subject to a credit of $12.84, and remanded the cause to the Workmen's Compensation Board to reinstate the referee's award of August 15, 1944. From that judgment the appellants prosecute this appeal.

Appellants' counsel in brief states that the sole question involved in this appeal is whether the Jefferson Circuit Court had jurisdiction to enter its judgment. He states that the jurisdiction is strictly limited by the statute to a determination as to whether or not there was sufficient evidence to sustain the findings of the Board and that where there is any competent, credible testimony to support the findings of the Board, the Circuit Court may not reverse.

Our first task, then, is to see whether or not the

award of the Board is supported on this record by competent, credible testimony. In its opinion the Board held that the plaintiff's alleged accident and resultant injury at the plant of the defendant did not qualify as an accident within the judicial definition of an accident, and found:

"There is no satisfactory evidence to show that it (plaintiff's alleged disability) resulted from any trauma or injury received in the course of his employment on December 9, 1942."

It is admitted that the plaintiff and defendant, through defendant company's insurance carrier, executed forms SF-4 and SF-5 wherein the insured company accepted liability on account of the alleged accident. The nearest the defendant comes to refuting any of the claimant's statements concerning his injury is the evidence of two fellow employees, one his boss, and another a fellow workmen, each of whom testified that he did not see any accident happen nor did the claimant complain of any accident or injury while he was working. There is no denial or attempted refutation of the fact that the claimant attended the general hospital for treatment and was there placed in a cast or brace, and that he now wears a brace on his back.

All the other testimony was that of doctors who based their findings upon the subjective symptoms as related to them by the claimant.

Dr. Wood, witness for appellant, testified that the claimant was complaining of tenderness which was localized over the left posterior-anterior iliac spine and that this particular bony landmark appeared larger than the corresponding one on the opposite right side. He stated further that in his opinion it was a result of a strain of the fascia and of the muscles arising from that bony prominence, with hemorrhage and scarred tissue forming as a result of it. He then testified as follows:

"52. Doctor, did you—were you able to attribute, then this pain to any particular cause? A. I felt it probably was due to what I just described, namely, the scar tissue resulting from hemorrhage around the posterior-inferior iliac spine.

"53. What, in your opinion, would cause the hemorrhage? A. That can be due to the tearing of the

muscles and fascia attached to that region, in an accident such as he said he sustained.

"54. Then if you rule out all other causes, and still had this positive history of an accident, wouldn't it be more logical to attribute the pain and tenderness that Mr. Yenowine had over that iliac spine, to the accident? A. I think it is entirely possible to attribute it to the accident—yes, sir. That is what I was trying to do, as I say—would be to attribute it to the accident and to fit a diagnosis into the history of his accident with the findings which he had."

Dr. Dwyer testified as follows:

"7. Did you form any opinion as a result of your examination here as to what if anything the man is suffering from? A. He has a characteristic set of symptoms that follow a sacro-iliac slip. He describes it that when he stands he gets a bearingdown feeling on the left side. When he takes the brace off he gets an all-gone feeling like he is going to give down on that side."

Dr. Jefferson stated that the sacro-iliac articulation of the left is more prominent than on the right, and then testified further as follows:

"6. And a low back brace such as this man was wearing, do you remember what kind of brace it was? A. The type of brace that is used for sacro-iliac and low back sprain.

"7. Well, Doctor, from your examination of the man and from your experience as a physician, what in your opinion was this man suffering with, if anything? A. I think he had a left sacro-iliac sprain."

Complaint is made about the character of testimony of Dr. Dwyer, who examined the plaintiff for the sole purpose of testifying, and whose opinion and testimony rest upon the subjective complaints made to him by the claimant. In support of their contention, they cite Chesapeake & Ohio R. Co. v. Wiley, 134 Ky. 461, 121 S. W. 402, wherein the court put its stamp of disapproval upon that type of testimony. It might be noted that the testimony of Dr. Wood, appellant's doctor, was based upon an examination for the purpose of testifying. However, it was purportedly taken for the purpose of testifying about the disability of the claimant. Dr. Wood's examination was made almost upon the history of the

case of the subjective symptoms as related to him by the plaintiff. The testimony of all the doctors is based upon the subjective symptoms as related by the claimant, and, according to the claimant, grew directly out of the lifting of the beams on December 9, 1942.

The evidence further shows that prior to the time complained of by the claimant he was a strong, hard working man, but that since the day of the alleged injury he has been unable to work as before. It can be said to his credit that he obviously has tried, first, having worked for the company herein, and apparently losing his job because of his inability to continue regularly at hard work, and after his discharge with the appellant company, he worked with other companies and lost out because of inability to do the work.

The cases, which hold invariably that the sole function of the court in compensation cases is to ascertain whether the record discloses any competent evidence of probative value to support the findings of the board, are so numerous that it is entirely unnecessary to cite them here. However, an impressive line of decisions holds that the statutory requirement, wherein the findings of fact by the Compensation Board shall not be disturbed by the courts if there is evidence of convincing force to uphold them, has no application to a case which only presents a question of law based on undisputed facts. See Crummies Creek Coal Co. v. Napier, 246 Ky. 569, 55 S. W. 2d 339; A. C. Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 61 S. W. 2d 1; Ætna Casualty & Surety Co. v. Petty, 282 Ky. 716, 140 S. W. 2d 397.

In Turner Day & Woolworth Handle Co. et al. v. Pennington, 250 Ky. 433, 63 S. W. 2d 490, it was held that where the controlling facts in a compensation case were undisputed, question whether injuries arose out of and in the course of employment held a question of law reviewable by courts. See also Calloway v. Octavia J. Coal Mining Co., 271 Ky. 8, 111 S. W. 2d 395.

In the instant case there is no evidence that the injury did not arise exactly as the claimant stated. The mere negative statement of two fellow employees that they didn't see anything happen or didn't hear him complain, is not proof that it didn't happen. The undisputed evidence is that he was employed by the appellant company; was assisting in lifting heavy steel beams for

them; that he was a strong and able-bodied man and a hard worker before the day of the alleged accident; that he first noticed a tired, depressed feeling, which Dr. Jefferson testified was a strong symptom of a sacro-iliac slip; that he noticed it around 2:30 o'clock in the afternoon; that in spite of the noticeably tired feeling he continued working until the end of the day; that on the following day he was unable to get out of bed because of the pain; that he was treated by the insurance carrier's doctor, who placed him in a cast; that he went to the general hospital where he was first put in a Williams cast and later a lower back brace; and that all the doctors testifying either on direct or under cross-examinaation stated that such an injury could arise from doing work as he had explained to them.

There is no conflict in the testimony as to whether the employment as the claimant described it, or some independent intervening act, was the proximate cause of his disability, and the Board did not find it a fact that one or the other was the proximate cause. If there was conflicting evidence upon the affirmance of the claimant and denial by the defendant fairly raising an issue of fact, it was for the Board to decide, resting its decision upon that finding of fact. Here the Board merely stated that "the evidence submitted has not established that he sustained a personal injury by accident arising out of and in the course of his employment and further finds that he is not entitled to compensation therefor under the provisions of Chapter 342 KRS." This, in ordinary trial procedure, is the equivalent of a court giving a peremptory instruction. There was no finding as to the extent of disability.

Counsel for appellants comment on the case of Great Atlantic & Pacific Tea Company v. Sexton, 242 Ky. 266, 42 S. W. 2d 87, which appears to be the one adopted by the Board for a definition of an accident. They seem to base their idea entirely upon the definitions of the word as found in the opinion above. It will be noted that the court held Sexton's injuries traceable directly to his coming in contact with meats laden with tularemia germs. There was no slipping, stumbling, falling, or the happening of any overt something, but merely the contracting of tularemia by the employee while in the course of his employment. This court held that it was conpensable as a traumatic injury by accident.

We call attention to the case of Coleman Mining Co. v. Wicks, et al., 213 Ky. 134, 280 S. W. 936, in which a fellow by the name of Wicks exerted a "very hard push to keep the machine from running back down the boards." About 10 minutes afterwards, Wicks, who had in the meantime been loading coal into a coal car, began to complain of pains in his breast, stomach and head, and before they could get him to the outside of the mine, he died. An autopsy was performed on the following day which disclosed that Wicks had died from a ruptured blood vessel in the brain. Doctors gave it as their opinion, in answer to an hypothetical question, that the hemorrhage was "due to that violent lifting—physical exertion." The evidence also disclosed that Wicks had an enlarged heart and had been suffering from heart disease for a long time before his death. The Board found that the death was the result of a traumatic injury by accident and compensable. The lower court affirmed that award and this court upheld it. About 10 minutes elapsed after the physical exertion before Wicks made any complaint, during which time he continued working, and in the instant case, complaint was not made until the following day. Yet, each of them were traceable to physical exertion related to the incidents of employment, the difference being, in the one, complaint was made after about 10 minutes, and in the other, on the following day.

It appears to us, under this evidence, that claimant traced his resultant personal injury to a proximate cause set in motion by his employment, and by undisputed facts proved the direct connection between the personal injury as a result, and the employment as its proximate cause.

The court below found the claimant was permanently and totally disabled, and further directed the judgment to be entered. In this the court below exceeded its authority.

In Three Rivers Oil Corporation v. Harper, 258 Ky. 253, 79 S. W. 2d 972, 973, we held:

"Where Workmen's Compensation Board's finding as to disability was erroneous as based on incompetent evidence, court could not make finding as to disability, but should remand case to board for finding based on competent evidence. Ky. St. 4880 et seq."

In the case of Black Motor Co. v. Spicer, 290 Ky. 111, 160 S. W. 2d 336, we held:

"Where claimant filed petition in circuit court to review order of Workmen's Compensation Board, the court's judgment, even if testimony authorized reversal of order, should have gone no further than to direct board to set aside the order and to render an award appropriate to character of accident sustained, and it was reversible error for the court to direct specifically the judgment that board should render. Ky. St., sec. 4884."

We, therefore, conclude that the court below was correct in setting aside and holding for naught the order of the Board, but erred in adjudging that the plaintiff was permanently and totally disabled and directing specifically the judgment that the Board should render.

Wherefore, the judgment is reversed with directions to remand the cause to the Workmen's Compensation Board for a determination of the degree of disability of the claimant and for an award in keeping therewith.