**A. E. BREWER et al. (Kentucky Workmen's Compensation Board), Appellants,**

v.

**Pete MILLICH, Appellee.**

Court of Appeals of Kentucky.

March 4, 1955.

Craft & Stanfill, Hazard, for appellants.

Cordell H. Martin, Hindman, for appellee.

MONTGOMERY, Justice.

Pete Millich had been cutting and logging timber since 1906. At the time of the injury suffered, he was sixty-six years of age, had very little education, and from the language used in his depositions and from his name, he appears to have been of foreign extraction. On October 6, 1951, he sustained an injury while working in the timber which resulted in a hernia. Since the question involved here addresses itself to facts other than the circumstances surrounding the injury, no further statement of those circumstances will be made.

Millich had entered into a contract with A. E. Brewer, a manufacturer of staves, on July 30, 1951, to cut, roll, bark, and split into 38-inch stave bolts 148 white oak trees owned by Brewer on certain lands located in Knott County, for which he was to be paid at the rate of $35 a cord. The question involved is whether Millich was an independent contractor such as would preclude him from receiving benefits under the Workmen's Compensation Act, or whether he was in fact an employee of A. E. Brewer. The contract is as follows:

"This agreement made and entered into this 30th day of July 1951 by and between A. E. Brewer of Hazard, Kentucky, party of the first part and Pete Mellish of Topmost, Kentucky, party of the second part, Witnesseth:

"Party of the first part is the owner of 148 white oak trees 20 inches and up in diameter located on the lands of Jeffie Hall in Knott County Kentucky, which he desires to have made into bourbon stave bolts and delivered to his mill at Dwarf, Kentucky.

"Second party agrees to cut, skid, roll, bark and split into 38 inch stave bolts and deliver to first party's mill at Dwarf, Kentucky beginning August 1st. 1951 and continuing until 125 cords of bolts have been made and delivered to first party's mill. All bolts to be delivered before Dec. 31, 1951. All bolts are to be graded at Dwarf Mill and any culls thrown out and not paid for. All bolts are to be branded in the woods by second party before hauling.

"Should it develope that these 148 trees turn out more than 125 cords of bolts, then it is mutually agreed that adjustment will be made Dec 31 1951 or before on the price on the number of cords in excess of 125 cords.

"Second party as an independent contractor is to hire his own men, make his own pay roll, and from same make and report deductions of social security, withholding tax, and Kentucky Unemployment tax, and pay same to proper authorities.

"Second party is to report to first party the gross amount of each employee's pay at the end of each month and first party agrees to carry Liability Insurance on said employees, charging premium for same to second party and deducting same from price of bolts delivered.

"Second party is to use care in cutting, manufacturing and delivering said bourbon stave bolts, and should he fail to do so, as instructed by first party, then first party has the right to cancel and take over this contract and have timber properly manufactured and delivered.

"First party agrees to pay second party on Monday the sum of Thirty Five Dollars ($35.00) per cord of 4 x 8 feet x 38 inches for all bourbon stave bolts delivered and accepted at the mill the week before.

"This contract to be completed by December 31, 1951.

"s/ A. E. Brewer
First Party
s/ Pete Millich
Second Party
"s/ Foster Caufill"
Witness

The Workmen's Compensation Board, on review, denied compensation and held Millich to be an independent contractor, but the Knott Circuit Court allowed him compensation as an employee, from which judgment this appeal is prosecuted.

The contract executed between these parties was prepared by Brewer in the presence of Millich. On the same date that the contract was prepared and signed, Brewer presented to Millich a Workmen's Compensation Register which, apparently, had already been prepared in the name of "Pete Millich, Contractor for A. E. Brewer, Hazard, Kentucky." Millich testified that he signed this register in the column therein designated "Name of Employee" and entered his social security number thereon on the same day that the contract was signed.

The testimony shows that Brewer arranged for the workmen's compensation insurance and paid the monthly premiums thereon with deductions from the pay due Millich. Brewer was called as if upon cross-examination and testified that the monthly premiums were paid by him, based upon the estimated amount of wages paid by Millich, because Millich failed to furnish him with a statement of the wages paid from time to time.

The injuries suffered by Millich were not reported to Brewer for about a month or more afterwards. On January 27, 1952, A. E. Brewer signed and forwarded to the Workmen's Compensation Board the standard form for Employer's First Report of Injury, on which he signed as his official title "Owner", and on which his name "A. E. Brewer" was entered on the first line opposite "Name of Employer". On line 11 of this report, the name "Pete Mellish" is shown as the name of the injured person, and on the next line, in answer to the question "Did employee sign the Employee's Register?" the answer was given as "Yes" and the date given as "July 30, 1951." Millich also testified that when he reported the injury to Brewer, Brewer asked, "Why did you not report it before?" It may be noted at this point that all of the testimony was introduced in behalf of Millich and that there was no conflict in the evidence.

Since the facts are not disputed, the question of whether appellee was an independent contractor or employee is one of law. Raponi v. Consolidation Coal Co., 224 Ky. 167, 5 S.W.2d 1043; Aetna Casualty & Surety Co. v. Petty, 282 Ky. 716, 140 S.W. 2d 397.

In answering this question, the approach to be used is that of determining the relation of employer-employee under the Workmen's Compensation Act rather than of master and servant or principal and agent in tort actions. The workmen's compensation approach is broader and uses a more liberal construction favoring the employee. This is in harmony with the purpose of the Act in affording protection to the employee because of his inability to withstand the burdens of injury occasioned by his employment and the resultant loss of work. In Black Mountain Corporation v. Stewart, 272 Ky. 140, 113 S.W.2d 1141, 1143, the principle is stated as follows:

"* * * While the rule of liberal construction of our compensation law required by the act (Kentucky Statutes, § 4987) and followed by the court 'does not dispense with the necessity of the claimant proving his case nor relieve the board of its duty of resting its finding and award on some competent and relevant evidence,' the court would not be authorized to read into the act something that would totally thwart its humane spirit and purposes nor to deny compensation where a liberal construction within the bounds indicated would justify it. * * *"

In Robinson v. Lytle, 276 Ky. 397, 124 S.W.2d 78, 80, the Court said:

" * * * we must look to the philosophy of the Compensation Act in arriving at its proper construction. It was the intention of that Act to place the burden for injuries received upon the industries in which they were suffered rather than upon a society as a whole."

It is provided in KRS 342.004 that the Workmen's Compensation Act shall be liberally construed on questions of law. In this connection, it might be well to call attention to KRS 342.050, wherein it is provided that no employer may by contract or agreement, written or implied, relieve himself, in whole or in part, of any obligation created by this Act. This statute is mentioned for the purpose of showing the intention of the Act to protect the employee and without saying whether this section would forbid or prohibit the type contract involved in this case.

The Courts have used many tests in determining the question at issue. These methods are varied and dependent upon several factors, of which few or many may be present in any one case. Again, the trend has been to favor the award of compensation based upon a finding of employment. In a discussion of the weight of the individual factors involved in deciding this question, it is said in Larson's Workmen's Compensation Law, Volume 1, Section 44.31, Page 643, that independent contractorship is established usually only by a convincing accumulation of the various tests involved, while employment, although a similar accumulation is often attempted, can, if necessary, often be solidly proved on the strength of one of the various factors.

No hard and fast rule can be formulated to determine when a person undertaking to do work for another is an independent contractor and when he is a servant. Each case must be determined upon its own facts. There are many well-recognized and fairly typical indicia of the status of independent contractor, but the presence of one or more of these in a case is not necessarily conclusive of this status. 134 A.L.R. 1029; 27 Am.Jur., Section 5, Page 485.

In determining the status of the claimant in these cases, the Courts have closely scrutinized written contracts with the employer, and where the individual case justified it, have gone behind such a contract describing one as an independent contractor and have held him to be an employee.

In Horovitz on Workmen's Compensation, Pages 228 and 229, it is said:

" * * * But that does not mean that employers can enter into colorable contracts with their employees to call them 'employers' or 'independent contractors,' and thus avoid or evade compensation coverage. Even written contracts, as distinguished from oral agreements, purporting to make persons independent contractors, no matter how 'adroitly framed,' can be carefully scanned and the real relationship ascertained. * * *"

" * * * Courts look behind the legal terminology to discover and expose the real relationship between the parties as regards the question of the failure to obtain compensation coverage. * * *"

Many forms of oral and written agreements have been used to create the shadow of independent contractor, partner, or lessee, but the Court should look to the substance rather than the shadow. Glielmi v. Netherland Dairy Company, 254 N.Y. 60, 171 N.E. 906; People on Complaint of Cohen v. Levine, 160 Misc. 181, 288 N.Y.S. 476; Montello Granite Co. v. Industrial Commission, 227 Wis. 170, 278 N.W. 391; Whipple v. Industrial Commission, 59 Ariz. 1, 121 P.2d 876; Maher v. Commander Taxi Corp., 227 App.Div. 832, 237 N.Y.S. 831; Utility Coal Co. v. Rogez, 170 Okl. 264, 39 P.2d 60; Pacific Employers Insurance Co. v. Industrial Accident Commission, 3 Cal.2d 759, 47 P.2d 270; U. S. Fidelity & Guaranty Co. v. Industrial Commission, 42 Ariz. 422, 26 P.2d 1012; Tokash v. General Baking

Co., 349 Mo. 767, 163 S.W.2d 554; and Gerrard Co. v. Industrial Accident Commission, 17 Cal.2d 411, 110 P.2d 377.

In Chaffee v. Sears Roebuck & Co., 283 App.Div. 757, 128 N.Y.S.2d 329, it was held that a coerced written agreement designating an employee as independent contractor was not conclusive and that the board could look behind the contract and ascertain the real relationship.

■ An independent contractor has been defined as one who is doing his own work in his own way; that is, he must have some particular task or work he has a right and an obligation to complete, and he must be subject to no control in the details of its doing. Bowen v. Gradison Const. Co., 236 Ky. 270, 32 S.W.2d 1014; and cited cases.

■ In the contract prepared by appellant Brewer, the details of the particular task are set out as to what is to be done, how it is to be done, when it is to be done, and with the right of cancellation by Brewer upon Millich's failure to do as instructed by Brewer. Briefly, appellee was to "cut, skid, roll, bark, and split into 38-inch stave bolts" certain trees to be delivered after branding at Brewer's mill between specified dates. All bolts were to be graded after delivery by Brewer at his mill, with any culls thrown out and not paid for. Brewer asserted further control over appellee's work by providing that should appellee fail to use care in "cutting, manufacturing, and delivering said bourbon stave bolts" as *instructed* by Brewer, then he, Brewer, could cancel the contract and have the timber manufactured and delivered. The element of control in employer-employee relationships is considered important in determining the employee's status as such or as an independent contractor. From an analysis of the Brewer contract, it is seen that Brewer exercised control as to what type work was to be done, as well as the type product to be manufactured. He also retained the right to instruct appellee in the proper care in performing his work and had the final right to cancel the contract unless appellee performed as instructed by Brewer. This was a right to fire appellee if he failed to perform as directed by Brewer.

In Travis v. Hobbs, Wall & Co., 2 Cal. I.A.C.Dec. 506, a shingle bolt maker, engaged on the timber land of the defendant in the cutting of shingle bolts and paid at the rate of $1.75 a cord for all work done, the payday being at the same time as that of the men working on a wage basis, was held to be an employee notwithstanding the fact that he had no regular hours, was master of his own time, and was subject to no supervision other than that the shingle bolts conform to standard.

There are various factors in the instant case which make it stronger than the Travis case.

In addition to the control reserved by Brewer over the work, he also sought to protect himself from any financial responsibility arising from any injuries that might be suffered either by appellee or any of the men working for him, as well as shifting the responsibility for paying the employer's contributions for social security and unemployment insurance to appellee. Evidencing the vital concern Brewer had in protecting himself against any loss due to injuries by employees are his actions in the preparation of the contract, arranging for the compensation insurance, and paying the premiums therefor out of any compensation due appellee. In fact, he paid the premiums although Millich became overdrawn on his account and did not furnish statements of his payroll, Brewer paying on an estimated payroll. These things show that Brewer did not trust Millich to keep the insurance paid up and the resulting protection in force, and further indicate his desire to see that he, Brewer, was protected.

At this point, it is pertinent to ask if Brewer really believed Millich was an independent contractor. Why should he, Brewer, bother about the compensation insurance since he would not be responsible for any loss due to injuries unless the insured person was his employee?

The answer is that the contract was merely a subterfuge for the purpose of trying to

shift his responsibility as an employer. The action of Brewer in having Millich sign a compensation register on the same day the contract was signed designating him as an independent contractor is more consistent with the establishment of the relation of employer-employee than independent contractor. When Millich signed the register as an employee, he did so as an employee of Brewer, not of himself. Likewise, Brewer signed and forwarded the Employer's First Report of Injury to the Workmen's Compensation Board, wherein he was designated as owner and employer and Millich as employee. The facts in this case are stronger than in the Raponi case, above, wherein it was held that signing the register was not a controlling factor.

 Considering these elements, as well as the facts that Brewer was engaged as a manufacturer of staves and Millich had no capital with which to engage in business, in fact, was indebted for his board bill, the construction is inescapable that the contract in question was a sham erected for the purpose of shifting the responsibility of the injuries to employees from Brewer to Millich; and that as between these two parties, Millich was considered by Brewer, and was so treated by him, as an employee; and, therefore, is entitled to compensation. This does not determine the status of Brewer as to the men employed by Millich.

The cases of Diamond Block Coal Company v. Sparks, 209 Ky. 73, 272 S.W. 31; Raponi v. Consolidation Coal Co., above; Wright, v. Wilkins, 222 Ky. 144, 300 S.W. 342; and Louisville & N. R. Co. v. Newland, 176 Ky. 166, 195 S.W. 415, relied upon by appellants, are distinguished from this case, in that the facts with reference to the compensation insurance obtained by Brewer for the benefit of Millich are much stronger and more indicative of the employer-employee relation than the facts in the cases cited. It is unnecessary to follow the principle of estoppel cited in the cases by appellee because in each of those cases there was no question of the status of employee.

The trial court found appellee to be totally disabled and awarded compensation on that basis. In this, the court exceeded its authority. Joseph W. Greathouse Co. v. Yenowine, 302 Ky. 159, 193 S.W.2d 758. The court was correct in finding that appellee was an employee of Brewer and, therefore, his injury was compensable.

The judgment is affirmed insofar as it holds that appellee is an employee and entitled to compensation, and is reversed insofar as it fixes the disability and awards compensation therefor. The cause should be remanded to the Workmen's Compensation Board for a determination of the degree of disability of the claimant and for an award in keeping therewith.