Let (Lett) LEE, Appellant,

v.

INTERNATIONAL HARVESTER COM-
PANY et al., Appellees.

Court of Appeals of Kentucky.

Dec. 13, 1963.

Grant F. Knuckles, Pineville, for appellant.

William A. Rice, Harlan, for appellees.

PALMORE, Judge.

Let (Lett) Lee appeals from a judgment of the Harlan Circuit Court affirming an order of the Workmen's Compensation Board adopting the findings of its referee and denying his claim for compensation.

The critical question is whether the evidence that Lee sustained an injury arising out of and in the course of his employment was conclusive, leaving the Board no alternative to decide otherwise.

Lee is substantially disabled from what the doctors believe is a herniated disc.[1] He says that while he was lifting a heavy metal pan in appellee's coal mine on June 14, 1960, he felt a sudden pain or "catch" in his back and could not do any more lifting. He worked during the remainder of his shift with the aid of a pry bar, but was unable to return to the job thereafter. He

1. They cannot be entirely certain without performing surgery.

reported to the camp physician, a Dr. Mullen, on June 20, 1960. Following preliminary observation and treatment over a period of several days the doctor put him in the hospital and eventually referred him to specialists, who confirmed the diagnosis.

At the time he claims to have sustained the injury Lee was 46 years old and had been employed by the appellee company for a number of years. He had worked steadily and was considered to be a good workman. He testified that he had never before experienced trouble with or lost work because of his back. On the other hand, Dr. Mullen said Lee's record showed a history of backaches at frequent intervals beginning in 1946 or 1947, and that on October 21, 1960, "the patient stated to me that he had a crushed and bruised back, and I specifically asked him then directly when this injury, and so forth, occurred, and at that time he stated to me he could remember no injury to his back and this statement appears at other times back through the years. On each occasion, when he complained of his back, there was a brief note of 'no history of specific injury.'" Asked whether Lee at any time on or before October 21, 1960, had told him he was injured in the mine on June 14, 1960, while trying to lift a belt pan, Dr. Mullen replied, "No, I have no record of his reporting for a back injury at any time."

Dr. Inge, an orthopedic surgeon of Knoxville, Tennessee, to whom Lee had been referred by Dr. Mullen, first examined him on July 21, 1960, at which time Lee gave a case history to the effect that on June 20, 1960, when he started to go to work a pain struck him in the low part of his back radiating toward his right buttock. It was so severe that he did not go on to his job but instead reported to the Benham hospital. "Now as to what he did to start that pain," Dr. Inge testified, "I have no record. * * * The patient says he has had attacks of pain in his low back and right buttock region for several years

since working in the coal mine but never as severe as on June 20." This witness was of the opinion that if Lee had mentioned having strained himself while lifting something heavy, he, Dr. Inge, would have recorded it in the case history.

Lee's supervisor and fellow employes working with him on June 14, 1960, did not recall any injury to or complaint by him at the time. Their first knowledge of his indisposition came through his failure to report for duty on the next working day.

Though retained by the company, Dr. Mullen also served on a referral basis for the union welfare fund and engaged in private practice in the community where the mine was located. Medical services rendered to mine employes were paid for by the company if occasioned by industrial accident and by the welfare fund if not. The import of Dr. Mullen's testimony is that he did not, at the time of treating Lee and referring him to the specialists, consider the ailment to be "industrially connected." Though Dr. Mullen was inclined to think of a ruptured disc in terms of a sudden injury, Dr. Inge testified that such a condition, though it may result from an acute injury, frequently comes on through degeneration of the disc by prolonged and repeated minor injuries over a period of time, without a sudden blow or strain.

Relying very largely on the case of Greathouse Co. v. Yenowine, 302 Ky. 159, 193 S.W.2d 758 (1946), counsel for Lee contends that the defensive evidence was merely negative in character, and without probative force to disprove the occurrence or sudden manifestation of the injury on June 14, 1960, as related by Lee. Though we are unable to accept this viewpoint, especially as to the testimony bearing on his case history, the approach itself is unsound, because it is premised on the assumption that once a claimant produces substantial evidence sufficient to support an award the Board is bound to find in his favor unless the defendant comes forward with some definite quantum of rebutting

evidence. That is a misconception, understandably induced by a faulty opinion in the Yenowine case and perhaps encouraged by the frequency with which, in reviewing findings adverse to the claimant, we have used the expression that in such cases the question is whether the findings of the Board are "supported" by evidence. Cf. Huddleston v. Collins & Peace Coal Co., Ky., 335 S.W.2d 929 (1960); Robinson v. Inland Steel Co., Ky., 343 S.W.2d 586 (1961); Brown v. American Radiator & Standard San. Mfg. Co., Ky., 346 S.W.2d 713 (1961); Nashville Coal Co. v. Epley, Ky., 350 S.W.2d 463 (1961); Knott Coal Corporation v. Smith, Ky., 354 S.W.2d 513 (1962); Martin v. Porcelain Metals Corporation, Ky., 358 S.W.2d 485 (1962).

 As a fact-finding agency the Board is in the same position as a jury, and the same rules apply. The claimant, bearing the burden of proof, "has the risk of not persuading the Board in his favor." Columbus Mining Co., v. Childers, Ky., 265 S.W.2d 443, 445 (1954). Standing alone, unimpeached, unexplained, and unrebutted, his evidence may or may not be so persuasive that it would be clearly unreasonable for the Board not to be convinced by it. There are, therefore, some cases in which no evidence whatever is required in "support" of a negative finding, and among them are those in which the claimant's evidence would justify a favorable finding but would not require one as a matter of law. In such instances the Board's finding is conclusive whether it be for or against.

 There are three respects in which we find Greathouse Co. v. Yenowine, 302 Ky. 159, 193 S.W.2d 758 (1946), must be overruled. The first is its necessary implication that if the claimant produces evidence sufficient to support an award he creates perforce a rebuttable presumption and is entitled to a favorable finding in the absence of a rebuttal. The second is its

erroneous statement that a negative finding is the equivalent of a peremptory instruction in an ordinary jury trial.[2] The third is its conclusion that because the *evidence* was substantially undisputed the controlling *facts* were undisputed, thus making the factual issues a question of law. That the evidence in a case is not in conflict does not necessarily eliminate or settle the essential issues of fact.

The analysis in Lee v. Tucker, Ky., 365 S.W.2d 849 (1936), is appropriate to this case. In each instance the evidence was sufficient to support a finding for the plaintiff, but the defense testimony injected enough doubt to justify the fact-finding agency's failure to be convinced.

As in Rowe v. Semet-Solvay Division Allied Chem. & Dye Corp., Ky., 268 S.W.2d 416 (1954), we recognize that the appellant Lee, an unlettered man who could neither read nor write and obviously was not very articulate, should not be held strictly accountable for his inability to diagnose the injury and to describe it in unequivocal terms consistent with the eventual assertion of a compensation claim. Let it be said to his credit that he did not go to the doctor's office with a law book in his hand. But that is not all. He chose to deny that he had ever before suffered any back trouble at all, contradicting what he had told the doctors in this respect. It is quite possible that the degenerative disc condition resulted gradually from his years of lifting and bending in appellee's mine, climaxing or "lighting up" on June 14, 1960, and if so it is regrettable that he did not see fit to pitch his case openly on that basis. However, such a condition can be caused by many kinds of strenuous physical exertion, including those commonly experienced around house and garden. On being apprised that Lee had a history of back trouble which for some reason he chose not to reveal or explain in his testimony, the Board was not without reason

---

2. Which, of course, it *may* be. But also it may be the *equivalent of a jury verdict for the* defendant, as it is in this case.

to be dissatisfied on the vital question of what really did cause it.

Our conclusion must be and is the same as it was in Columbus Mining Co. v. Childers, Ky., 265 S.W.2d 443, 445 (1954), "that the evidence of the claim was not so clear-cut and convincing that we could justifiably conclude that the Board acted erroneously as a matter of law in reaching its * * * finding that the injury did not arise out of and in the course of his employment."

The judgment is affirmed.