**BLUE DIAMOND COAL COMPANY,**
Appellant,

v.

**Lee BAKER et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 14, 1964.

Maxwell P. Barret, Reeves, Barret & Cooper, Hazard, for appellant.

Calvin N. Manis, H. B. Noble, C. A. Noble, Jr., Hazard, for appellees.

JOHN A. BRESLIN, Special Commissioner.

This appeal is by Blue Diamond Coal Company, defendant in circuit court, from a joint and several judgment rendered against it and Wilgus Durbin, DBA Durbin Coal Company, in favor of 55 employees of Durbin and in the aggregate sum of $45,664.73. Durbin has not appealed. The parties shall be referred to as they appeared in circuit court.

Plaintiffs, members of Local Union No. 5911, of United Mine Workers of America,

instituted this action to recover vacation pay and certain wages accruing to them after May 6, 1960, under the terms and provisions of a Wage Agreement covering the coal mining industry. The Wage Agreement, in part, established wages and other benefits due employees from their employer.

The pleadings and proof herein establish that plaintiffs, prior to March 31, 1960, had been employed by Blue Diamond Coal Company in its underground mining operations. On March 31, 1960 Blue Diamond Coal Company closed its underground mining operation and paid plaintiffs all wages and vacation pay due under the aforesaid Wage Agreement. Blue Diamond Coal Company kept in operation its coal tipple where coal was processed for shipment to the coal markets. Instead of producing coal which was processed over its tipple for shipment to the coal markets, Blue Diamond commenced purchasing coal produced by others and processed it for shipment to the coal markets. The tipple operation was covered by the Wage Agreement sued on. It appears from the evidence, however, that none of the plaintiffs was employed in or on Blue Diamond's tipple operation.

Wilgus Durbin, a former foreman of Blue Diamond Coal Company, leased the former underground mining operation of Blue Diamond Coal Company on or about May 6, 1960, and employed plaintiffs to work in the underground operation at or about that time. Durbin, after obtaining the lease from Blue Diamond Company, entered into the Wage Agreement referred to with plaintiffs' union. He did not pay the wages and vacation pay called for in the said Wage Agreement. The plaintiffs, during the period of employment with Durbin and in the summer of 1960, met with Durbin on several occasions in an attempt to resolve their differences and when these negotiations broke down, this suit followed.

■ The plaintiffs, while admittedly not employees of Blue Diamond, sought to establish a cause of action against Blue Diamond by pleading but not proving that the agreement between Durbin and Blue Diamond, of which they professed ignorance, was entered into as a subterfuge by Blue Diamond to avoid the provisions of the Wage Agreement sued on. This contention is clearly not supported by the evidence. Plaintiffs' evidence discloses that, when Durbin entered into the Wage Agreement sued on, he informed plaintiffs' parent union and the President of plaintiffs' local union, that he was a lessee of Blue Diamond and this information in fact appears on the Wage Agreement entered into between plaintiffs' union and Durbin.

In an attempt to establish subterfuge, the plaintiffs, apparently in reliance upon Cove Fork Coal Company v. Newcomb, Ky., 343 S.W.2d 838, attempted to establish a master and servant relationship between Durbin and Blue Diamond. This was not pled by the plaintiffs, nor does the evidence establish such a relationship. Quite the reverse situation is shown, and in any event, it was a question of law for the court and should not have been submitted to a jury. Plaintiffs' evidence in this connection reveals that when they were employed by Durbin they returned to work at approximately the same places and at somewhat the same jobs as they had held while working for Blue Diamond; that they used the same machines and tools in their work; that Durbin occupied buildings or portions of a building belonging to Blue Diamond. The lease between Blue Diamond and Durbin covered the former underground mining operations of Blue Diamond. The lease provided for rental of certain equipment to Durbin, which equipment was the equipment formerly used by Blue Diamond in its underground mining operation. The lease also provided for the use of office space by Durbin. Durbin paid Blue Diamond royalty and/or rental for the coal, machinery, office equipment and/or space used by him. Cove Fork Coal Company v. Newcomb, supra, has no application. It was a Workmen's Compensation case, and it was recognized there that the approach to be used in determining

a master-servant relationship in Workmen's Compensation cases is different from a tort or contract case. See Brewer v. Millich, Ky., 276 S.W.2d 12.

■ Evidence which merely furnishes a basis of conjecture, surmise or speculation is not sufficient upon which to rest a verdict of a jury. Park Circuit & Realty Company v. Ringo's Guardian, 242 Ky. 255, 46 S.W.2d 106. The scintilla rule has been abolished in Kentucky. Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877. There is no evidence of substantive value to support the jury's verdict against Blue Diamond, and the judgment must be reversed.

The Wage Agreement sued on expressly recognizes the right of Blue Diamond to lease out its coal and to buy and purchase coal from others. The only prohibition against acquiring coal from others is where such coal was produced under a contract or wage agreement less favorable to the employees than those contained in the Wage Agreement sued on. The plaintiffs and their union had their contract with Durbin. It was their responsibility to see to the enforcement of the terms of the contract with Durbin. It was not the responsibility of Blue Diamond. If Blue Diamond was acquiring coal that was produced under an agreement less favorable to the plaintiffs than the agreement sued on, then the agreement sued on provided for a method by which such matter could be rectified. The agreement provided for a committee consisting jointly of representatives of labor and management. If coal was being purchased or acquired by a party to the wage agreement sued on which was produced under terms less favorable to the employees than the contract sued on, such fact should have been brought to the attention of the offending party. After a hearing before the committee, the offending party would have had an opportunity to effect compliance. A finding of violation by the committee is a condition precedent to any final determination that a violation of the agreement sued on had occurred. This ma-

chinery was never resorted to and was a condition precedent to the suit herein against Blue Diamond. Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876.

Blue Diamond moved for a directed verdict at the conclusion of the evidence for plaintiffs. It should have been sustained. At the close of all the evidence Blue Diamond again moved for a directed verdict. It should have been sustained. Instead, the issue was presented to a jury. In addition, Blue Diamond moved for a judgment notwithstanding the verdict. It should have been sustained. It was not.

For the reasons set forth, we recommend that the judgment of the Perry Circuit Court be reversed, with directions to enter a judgment dismissing the action.

The opinion is approved by the Court, and the judgment is reversed, with directions that a judgment n. o. v. be entered in favor of appellants.