**Betty Marie REESE, Appellant,**

**v.**

**CENTURY METALCRAFT CORPORATION, etc., Appellees.**

Court of Appeals of Kentucky.

Oct. 21, 1966.

W. Burton Cowley, Hatcher & Lewis, Elizabethtown, Ky., for appellant.

Armer H. Mahan, Louisville, for appellees.

HILL, Judge.

This is an appeal from a circuit court judgment upholding an order of the Workmen's Compensation Board disallowing appellant's claim for compensation on account of the accidental death of her husband, Paul Reese, December 9, 1963. The Board found the injury and resulting death did not arise out of or in the course of his employment with appellee.

Since 1959, deceased had worked for Century Metalcraft Corporation (hereinafter Century) part-time as a door-to-door salesman of cookware and utensils and at other times recruiting and training other salesmen. In crowded areas, he would distribute cards advertising his products and request the recipients to mail the cards to the district office in event they were interested in his products or in becoming a salesman for the company. These cards provided the nucleus of a planned itinerary. On the morning of the unfortunate accident, which occurred on U.S. Highway 421 near the Scott-Fayette county line, deceased had in his possession ten of the cards in addition to his usual supply of sample products of appellee. His journey commenced at his residence in Elizabethtown; and, for some unknown reason, he was traveling east on Highway 421 at the time of the accident. From Elizabethtown to Lawrenceburg and Versailles would have been a more direct route.

On Friday, December 6, 1963, deceased was interviewed by the manager of American Republic Insurance Company, in Lexington, Kentucky, and was offered part-time employment at $105 per week. He filled out the required application and withholding tax certificates and was advised to report at 9:00 a. m. the following Monday, December 9, 1963, for a two-day training school.

Appellant contends the accident occurred while deceased was "in the course of" his employment with Century. Appellee Century argues the accident did not arise out of and in the course of his employment but occurred at a time when deceased was engaged in his personal business.

The Board found that "the accident in question was not work-connected and did not arise out of and in the course of the decedent's employment with the defendant, but was caused by a trip that was personal in nature."

In support of the theory that the accident was work-connected, there was evidence that deceased had in his possession at the time of the accident the products of Century and the customers cards from which he could have planned his itinerary. He owned the automobile in which he traveled and had been using it to conduct the business of Century. Appellant testified deceased arranged the ten cards before

leaving home the morning of the accident and placed a rubber band around them; that he usually kept the cards separated in his shirt or coat pocket or on the car seat by his side; that deceased told her he was "going to Lexington and work in the vicinity." Among the cards found on the person of deceased after the accident was one signed by a person living in Chaplin on U.S. 62 about midway between Elizabethtown and Lawrenceburg. But there is no evidence that deceased called on the prospect at Chaplin.

The Board specifically found "from the evidence in this record it is apparent that the decedent was traveling to Lexington, Kentucky, for personal reasons, that is to take training as a salesman for the American Republic Insurance Company."

We now turn to the evidence on which this finding is based.

Shortly after deceased was taken to the Good Samaritan Hospital in Lexington, one of the employees of the hospital called the office of American Republic and asked for the address of Mrs. Betty Marie Reese. (So far as this record discloses, the manner in which the employees of the hospital obtained the name of the insurance company remains a mystery. Deceased was unconscious on arrival at the hospital and remained so until his death. The employee who made the call could only remember that she got the name of the company from another member of the emergency staff.) The proper address was given the employee calling, who in turn gave appellant's address to another employee. The latter broke the sad news to appellant by a telephone call to her home in Elizabethtown.

Appellant was taken to Lexington by her pastor, the Reverend Dr. Verlin C. Kruschwitz.

We quote from the testimony of Dr. Kruschwitz:

"Q. Dr. Kruschwitz, you remember giving a statement on March 23, 1964, to an adjuster for the Firemen's Fund Insurance Company, do you not?

"A. Yes, sir.

"Q. And do you remember making the statement that '* * * on the morning this accident happened Mr. Reese left his home in Elizabethtown and left for Lexington. He had previously talked to someone at some insurance company in Lexington—I don't know the name of the company—about learning insurance sales or some phase of insurance * * *.' Do you remember telling that to the adjuster?

"A. Yes.

"Q. Where did you get that information?

"A. A part of it was as a result of a discussion with Mrs. Reese on the way there, and a part of it was my own interpretation of the event.

"Q. What was the subject of the discussion with Mrs. Reese on the way there?

"A. She discussed their financial circumstances as a result of surgery which she had had previously and about which I was familiar and had mentioned that a time or two Paul had discussed with some insurance companies the possibility of some part-time work.

"Q. To continue your statement, do you remember making this statement: 'The day he was killed he was on his way to see someone at this insurance company and he was planning to stay in Lexington for a couple of days to study insurance'?

"A. Yes, sir, I made that statement, but I have explained the basis on which I came to that.

"Q. What is the basis?

"A. That Mr. Reese was going to Lexington, as I understood, for his regular business, and there was a possibility he might talk to a company while he was there.

The coroner of Fayette County testified he conducted an "informal" inquest to determine where deceased "was going and what he was doing in this vicinity at that hour of the morning * * *." The coroner was asked and answered the following question:

"Q. And what information did you obtain from Mrs. Reese?

"A. She stated that Mr. Reese, she thought, was reporting to work at an insurance company here in Lexington. He was due to report here at 8:00 o'clock."

Based on this information the coroner stated in his official report that the occupation of deceased was that of "insurance agent."

It is apparent the Board gave considerable credence to the testimony of the coroner. This is understandable in the light of the fact it is not shown or intimated that the coroner had any interest in the matter.

This case, like so many others this court is called on to decide, is a difficult one. It was difficult perhaps for the Board and the circuit court. The courts as well as the Workmen's Compensation Board are staffed by men possessing the usual sympathies and emotions for people in distress. It is sometimes difficult to keep sympathy and emotion from creeping into close and difficult factual cases, but we read in 52 C.J.S., Law, page 1024, that:

"It must not be a special rule for a particular person or a particular case, but must be intended permanently to direct and control matters applying to persons or things in general."

The established rule by which we must be governed in this case was restated in Lee v. International Harvester Company, Ky., 373 S.W.2d 418 (1963). We are persuaded that in the present case "the evidence of the claim was not so clear-cut and convincing that we could justifiably conclude that the Board acted erroneously as a matter of law in reaching its * * * finding that the injury did not arise out of and in the course of his employment" with appellee Century Metalcraft Corporation.

The judgment is affirmed.