## COLUMBUS MINING CO. v. CHILDERS.

Court of Appeals of Kentucky.

Feb. 26, 1954.

Craft & Stanfill, Hazard, for appellant.

H. B. Noble, Hazard, for appellee.

MILLIKEN, Justice.

This is an appeal from a judgment of the Perry Circuit Court setting aside an order of the Workmen's Compensation Board denying compensation. The referee of the Board dismissed the claim of appellee, Cecil Childers, holding that the appellant, Columbus Mining Company, hereinafter referred to as the "Company", had not received due and timely notice of the accident and injury for which compensation was sought. On review by the full Board, the finding of the referee was sustained, and, in addition, the Board held that appellee had failed to show "an injury by accident arising out of and in the course of his employment." On appeal to the Perry Circuit Court the chancellor set aside the above-mentioned opinion and order and remanded the case to the Board to determine the extent and duration and to fix an award to which appellee is entitled.

The appellee testified that he had worked for the company for five years prior to his injury. On the particular night in question, February 21, 1951, a mine car was derailed. Appellee said he picked up a tie and without assistance attempted to hoist the car onto the tracks. As he did so he felt a sharp pain in his back and legs. No foreman was present at the time, nor did any of appellee's fellow workers observe the incident. Appellee was unable to continue his duties. He was taken from the mine by a fellow worker, John Turner, and went home.

On the following day, February 22, appellee went to the camp physician, Dr.

Lindon F. Combs, but said nothing concerning the mishap. He was treated for neuralgia in the leg and sent to Hazard to a clinic. In Hazard Dr. Eli C. Boggs made an X-ray and also diagnosed the ailment as neuralgia. On February 27, appellee returned to the clinic, was examined by Dr. W. F. O'Donnell to whom he gave a history of having been injured while lifting a mine car. He was sent to the Mt. Mary Hospital where he remained for two days. Again, on March 2, he called upon Dr. Combs. At this time he told the physician he had been struck by a plank while building a hog pen and had been in pain ever since. Dr. Combs filled out United Mine Workers Welfare papers for the patient and requested that he go to Lexington for treatment by a neurosurgeon. On March 14, appellee was examined in Lexington by Drs. Kerns R. Thompson and Harvey Chenault, and informed that he had a ruptured intervertebral disc. He remained in bed until eight days later, when an operation was performed by Dr. Chenault and the disc removed.

It is not disputed that until March 5 appellee made no attempt to notify the company of the circumstances of his injury. On that day, however, he stated that he told his son, Earl, to inform the company superintendent, Tom Pfaffe, of the mishap. Earl Childers, also an employee of the company, corroborated his father's statement on this point. He declared that he had approached Pfaffe, informed him of his father's injury, and was told that it was too late to do anything about it. On cross-examination, in response to questions concerning the date of this exchange, the witness first said it occurred four or five days after the alleged accident, but later admitted he couldn't remember the date. He did say, however, that his fellow employees, Miles Watts and John Turner, were present when he talked to Pfaffe.

John Turner, the man who helped claimant out of the mine after the alleged injury, was the man to whom employees injured on that shift were in the habit of reporting their injuries. He was not an official of the company, but a fellow employee. He said Childers was "in awful pain" when he helped him out of the mine about two hours after he had started work; that Childers did not complain of an accidental injury at that time, but admitted that Childers, "as good a worker as I ever worked with," had not worked since then. In an affidavit he stated that Childers "had been complaining of his hip and leg hurting for a week or two before this time."

Another witness, Miles Watts, in an avowal, stated that Childers, right before he quit work, said he had hurt himself while "trying to pinch a car on the track with a tie." This witness did not see Childers at the moment of the injury. He also confirmed Earl Childers' statement that he had delivered a note to Mr. Pfaffe, the company superintendent, from the claimant, but he did not know the contents of the note or hear the rest of the conversation or remember the date. Mr. Pfaffe did not take the witness stand to deny this incident or that Earl Childers told him of the injury to his father, and so we assume the truth of their testimony was conceded.

The facts of this case are strikingly similar to those in the case of Rowe v. Semet Solvay Division of Allied Chemical & Dye Corporation, 1954, Ky., —— S.W.2d ——. In that case, the Board found for the claimant and we affirmed its findings. In the case at bar, Dr. Combs testified that Cecil Childers was a "slow thinker" and that the blow by a plank he received across the thigh while off duty could not account for what proved to be his real trouble, a herniated disc. In the Rowe case, four months elapsed before a claim was made for the injury; in the case at bar, not more than four weeks. In fact, not before the cause of his pain was finally diagnosed as a herniated disc did Rowe claim compensation, for he previously had claimed benefits under a health insurance policy stating his disability was caused by sciatic neuritis or arthritis, the same preliminary diagnosis in the case at bar. In view of the difficulty of diagnosis and all the circumstances involved in the Rowe case, we concluded in that case the Board properly held that notice was given "as

soon as practicable", KRS 342.185, and that the injury arose out of his employment. In the case at bar, the company knew from the first, through Mr. Turner, that Childers left the mine when in great pain and it did not deny that Childers gave it notice of his claim as soon as he knew that his trouble came from a herniated disc and not from neuralgia. Furthermore, six days after he had been forced to leave the mine, he told Dr. O'Donnell about the severity of the pain when he attempted to pry the mine car back on the track.

 While the findings of fact of the Board are ordinarily conclusive, they must be based on substantial evidence. The question of notice is often fraught with difficulty, and must be determined by the nature of the injury and the circumstances of the case. Childers obviously took the physicians' word for it that he was suffering from a sciatic condition, and, of course, made no claim. Herniated discs often appear gradually and are disabling in proportion to the degree of progress of the herniation, a circumstance which complicates medical diagnosis, and, certainly, explains the patient's own inability to quickly say what was wrong with him and how it occurred. In view of the nature of the injury and the circumstances of its occurrence, as confirmed by our reasoning in the Rowe case, we conclude as a matter of law the notice was adequate and was given as soon as practicable.

A much more difficult problem is presented by the Board's additional finding on Full Board Review that the claimant failed to sustain the burden of proof showing that he had received an injury by accident arising out of and in the course of his employment. The Board's referee had based his recommendation on the belief that there had not been proper notice of the injury given to the employer. It must be borne in mind that the claimant had told his physician several times that he had had no accident at his work, yet he told Dr. O'Donnell about the mine car incident six days after its alleged occurrence. No testimony of the surgeons was offered

to connect the injury with an accidental cause. On questions of fact the Board's findings are usually conclusive, KRS 342.-285, and the claimant has the risk of not persuading the Board in his favor, Civil Code of Practice, § 526. The claim here was thrown in doubt largely by the conflicting statements of the claimant, and it is the consensus of the court that the evidence of the claim was not so clear-cut and convincing that we could justifiably conclude that the Board acted erroneously as a matter of law in reaching its additional finding that the injury did not arise out of and in the course of employment.

The judgment is reversed.