**AMERICAN RADIATOR & STANDARD SANITARY CORP., Appellant,**

**v.**

**Story B. GIVENS et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 30, 1964.

Charles F. Wood, S. L. Greenebaum, Greenebaum, Barnett, Wood & Doll, Louisville, for appellant.

Robert F. Matthews, Atty. Gen., Frankfort, Herbert L. Segal, John Frith Stewart, Louisville, for appellees.

DAVIS, Commissioner.

The appellant employer seeks to reverse the circuit court's judgment which affirmed the Workmen's Compensation Board's award to appellee. The Board found appellee's disability to be 40% permanent, partial disability, and fixed the award accordingly. The Board found that the appellant's

disability is attributable to silicosis resulting from exposure in his employment.

Appellant attacks the judgment on these grounds: (1) The claim was not timely filed and is barred by limitation; (2) there is a failure to show that injurious exposure occurred within statutory period of limitation; (3) appellee's disability, if any, is not attributable to an occupational disease; (4) in any event, the Board's award is for a greater percentage of disability than warranted by the evidence.

Appellee worked for appellant continuously from 1948 until 1961; he had been employed by appellant as early as 1925, although his term of employment had been interrupted for reasons not here pertinent. Appellee explained that he had two classifications in his employment—as a laborer and as a grinder. The grinding phase of the work consisted of using an emery wheel to grind the weld from tubs, small ware and fixtures.

On February 28, 1961, appellee was laid off due to a reduction in the working force in appellant's plant. For approximately three months before the layoff, appellee had been engaged in his pursuits as a laborer; he said that he had worked as a grinder, however, as recently as October or November, 1960.

Appellee resumed work for appellant on May 12, 1961. On that date he began work at 3:00 p. m., but at 8:45 p. m. he reported to the plant hospital, complaining of shortness of breath. On that occasion it was ascertained that his pulse rate and blood pressure were abnormally high, although these conditions have not been related to any silicotic condition by any medical evidence. Appellee has not worked since May 12, 1961.

Appellant points out that appellee applied for and received unemployment compensation during the interim between his being laid off in February and returning to work in May, 1961. Appellee represented himself then to be available for employment.

Since 1940 appellee's chest had been regularly X-rayed by appellant's staff physician. Eight X ray reports, beginning May 3, 1940, and including January 23, 1956, reflect appellee's chest as negative for silicosis. In 1957 all of the chest X rays of appellee were reviewed by Dr. Alfred Miller, at the request of appellant's staff physician, Dr. Eugene H. Kremer, Jr. In a 1957 report to Dr. Kremer, Dr. Miller pointed out, from his review of the films, evidence of early fibrosis in both lungs and evidence of increased emphysema. Dr. Miller reported that, "This man appears to have a definite early fibrosis but one cannot at this stage say this represents a silicosis. It would probably be classified as an early first stage." Dr. Miller suggested that this condition would likely increase in extent, and "may cause some disability." It was the doctor's recommendation that "it might be wise to remove him from dust exposure."

After the examination of the films by Dr. Miller, appellant continued to have chest X rays for appellee. The report as to each of the X rays from 1959 through 1961 was "no change from Dr. Miller's report."

On February 24, 1961, shortly after being laid off, appellee consulted with his personal physician, Dr. Charles G. Bryant. Chest X rays were obtained by Dr. Bryant. The doctor advised appellee that the X ray showed evidence of pneumoconiosis and emphysema. On May 10, 1961, Dr. Bryant gave appellee a written recommendation "for light work" to begin May 12, 1961; it was as a result of this that appellee reported for work May 12.

It should be noted that on April 24, 1961, appellee filed the instant claim for compensation, asserting total disability. Dr. Bryant gave his medical opinion that appellee suffers 50% permanent, partial disability as the result of pneumoconiosis. Medical testimony for appellant is to the contrary, and reflects no occupationally caused disability. A Referee of the Board recommended dismissal of the claim, but the Board referred appellee to Dr. Oscar O.

Miller for examination pursuant to KRS 342.315. Dr. Oscar Miller's report, as well as his testimony before the Board, ascribes 25% permanent, partial disability to appellee caused by silicosis.

■ The conclusions announced in American Radiator & Standard Sanitary Corp. v. Gerth, Ky., 375 S.W.2d 817; Alva Coal Corp. v. Trosper, Ky., 375 S.W.2d 406; Brock v. International Harvester Co., Ky., 374 S.W.2d 507; Stephens Elkhorn Coal Co. v. Tibbs, Ky., 374 S.W.2d 504; and Mary Helen Coal Corp. v. Chitwood, Ky., 351 S.W.2d 167, dispose of appellant's assertions that the instant claim was untimely, either as to notice of disability or filing of the claim. Likewise, the same authorities resolve adversely to appellant its contention that appellee was not injuriously exposed within the meaning of KRS 342.-316(4). Substantial evidence for appellee supports his claim that he was injuriously exposed to dust in his employment much more recently than two years before his disability was asserted.

■ Neither is there merit in appellant's contention that whatever disability exists stems from nonoccupational emphysema. The simple answer to the contention is found in medical testimony flatly relating that the disability is attributable to an occupationally contracted condition.

■ Finally, appellant insists that in no event may the Board's award be for a disability greater than 25%. This argument is premised on the ground that Dr. Oscar Miller placed the percentage at 25% and Dr. Bryant set it at 50%, but no witness expressly used 40%. This position is untenable. KRS 342.316(5) provides that the amount of compensation in occupational disease cases shall be the same as provided for accidental injury or death under the general provisions of the Act. KRS 342.-110 vests the Board with authority to determine the percentage of disability in instances not specifically covered by the provisions of KRS 342.105. The finding of the Board here is within the range of competent medical testimony. It may not be disturbed by the court. Ajax Coal Co. v. Stanfill, 314 Ky. 628, 236 S.W.2d 880. Neither is the Board inexorably bound to be fully persuaded by the specific testimony of any one witness. See Lee v. International Harvester Co., Ky., 373 S.W.2d 418.

The judgment is affirmed.