**Charlie D. LEWIS, Appellant,**

**v.**

**UNITED STATES STEEL CORPORATION et al., Appellants.**

Court of Appeals of Kentucky.

Jan. 21, 1966.

C. W. Napier, Hazard, for appellant.

William A. Rice, Harlan, Robert Matthews, Atty. Gen., for appellees.

PALMORE, Judge.

This is a workmen's compensation case in which the evidentiary situation is on all fours with Horton v. United States Steel Corporation, Ky., 384 S.W.2d 73 (1964), except for the fact that the board, confronted by the conflicting opinions expressed by the medical witnesses offered by the respective parties, appointed and had the benefit of an additional opinion from a disinterested physician pursuant to KRS 342.315.

At the time the case was heard appellant was 59 years old and had been a coal miner for 43 years, the last 10 of which were in the employment of appellee company. His experience included much exposure to coal and silica dust. He is now disabled, probably from pulmonary emphysema. The question is whether the board was required by the evidence to find that the disability resulted from appellant's occupation as a soft coal miner.

Pulmonary emphysema is one of the two most prevalent chronic respiratory diseases in the country (the other being bronchitis). One of the defense witnesses went so far as to say that there is no more emphysema among coal miners than there is in the general population. It was the position of the company's medical witnesses that the only instance in which it is recognized that coal mining causes emphysema is upon a

showing of silicosis, which in turn must be indicated by "nodular fibrosis or massive fibrosis" in the lungs. Their X-rays did not disclose any such condition, and they were of the positive opinion that appellant does not have an occupational disease.

Two doctors in Baltimore, Maryland, formerly connected with Johns Hopkins University found no evidence of silicosis but stated that pulmonary emphysema can result from the inhalation of coal dust alone, without the intervention of silicosis (which is caused by inhalation of silicon dioxide in sand dust), and that in view of the case history it is fair to assume, and is their professional opinion, that appellant's disability is attributable to his occupation.

Another of appellant's medical witnesses, after physical examination, pulmonary function studies, and X-rays, diagnosed pneumoconiosis and attributed it to his employment. This doctor's X-rays showed "scattered areas of nodular fibrosis throughout the lung fields."

The board-appointed physician, Dr. J. E. Myers, Jr., of Lexington, a specialist in internal medicine, took the case history, performed a complete physical examination including electrocardiogram and pulmonary functional studies, and made X-rays. His report concluded as follows:

"This patient by history has spent forty-three years working in the mines mostly within the mines themselves and in rather dusty jobs. He now has chronic lung disease with a history of onset in 1960. He does show some pleural reaction on the left side, probably representing his pneumonia in childhood. His major symptoms at present are on the basis of a chronic bronchitis with obstructive defect in ventilation. His chest X-rays are not classically those of silicosis. The etiology of this patient's lung disease may therefore be a mixed one. I would be unable to state however that this patient has no silicosis on the basis of his history and physical findings. His symptoms in fact may all be on that basis. The major X-ray criteria for the diagnosis of silicosis are lacking in this individual and therefore I am not able to say without a doubt that this man's sole problem is that of a pneumoconiosis."

In a deposition taken after the submission of his report Dr. Myers made it quite clear that although he could not make a "definite" diagnosis of silicosis, it was nevertheless his opinion that appellant "probably has silicosis." He explained that the nodules in the lung fields observed in the X-ray photographs were "so widely scattered that one could not make an X-ray diagnosis of silicosis by the number that are present * * * I expressed an opinion that this patient most probably does have silicosis and therefore these micronodules would be on that basis * * * I I think this man's present pulmonary condition and his work history is of more value to me in making a diagnosis even of probable silicosis than anything else * * * If similar findings were present in this patient with a more definitive X-ray picture of silicosis I would make a definite diagnosis of silicosis."

In its decision and order rejecting appellant's claim the board recited that under the conflicting state of the evidence it chose to accept and believe the testimony of the defendant's doctors, citing Hardman v. Owensboro Forging Company, Ky., 309 S.W.2d 339 (1958).

■ Under KRS 342.121(4), which applies to the appointment of a disinterested physician in subsequent injury cases, the findings and conclusions of the physician so appointed are, if unequivocal, binding on the board. However, KRS 342.315 does not contain a similar provision, from which we think the only reasonable inference for us to draw is that the findings and conclusions of a physician or physicians acting pursuant to KRS 342.315 are not conclu-

sive. Hence the board has the option, within reason, to reject them. Cf. American Radiator & Standard San. Corp. v. Givens, Ky., 383 S.W.2d 690, 692 (1964).

Clearly, Dr. Myers felt that this appellant probably has silicosis and that it is at least a contributing factor in his disability. In view of the observation in Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47, 49 (1961), that the law does not demand certainty of cause, probability being sufficient, it is difficult to understand why the board, after having gone to the trouble of seeking Dr. Myers' assistance in resolving its doubts, would then turn a deaf ear on his conclusions. That they were couched in terms of probability rather than absolute certainty did not make them in any sense equivocal. Nonetheless, the board is the ultimate fact-finding authority, and that was its prerogative. Hence the judgment of the circuit court affirming the order was correct. KRS 342.-285; Branham v. Eastern Coal Corporation, Ky., 389 S.W.2d 926 (1965); Horton v. United States Steel Corporation, Ky., 384 S.W.2d 73 (1964); Roark v. Alva Coal Corporation, Ky., 371 S.W.2d 856 (1963).

The judgment is affirmed.