George D. SMITH and Workmen's Compensation Board of Kentucky, Appellants,

v.

Jim PERRY, Appellee.

Court of Appeals of Kentucky.

Jan. 27, 1967.

Rehearing Denied March 24, 1967.

Doyle & Doyle, G. E. Reams, Harlan, for George D. Smith.

Robert Matthews, Atty. Gen., Frankfort, for Kentucky Workmen's Comp. Board.

James S. Greene, Jr., Harlan, for appellee.

DAVIS, Commissioner.

This appeal attacks a judgment in a workmen's compensation proceeding wherein the circuit court overturned an award for total permanent disability which had been made to appellant Smith by the Workmen's Compensation Board. The circuit court based its ruling on a finding that Smith was not an employee of appellee Jim Perry at the time of the injury. The Board had found that Perry was the employer of Smith. The determinative question is whether the Board's finding was supported by substantial evidence.

An unusual chronology appears in this case. The Board's award was made March 4, 1958. As noted, the award was for total, permanent disability, plus allowable medical expenses. Perry perfected an appeal to circuit court in March, 1958; the circuit court rendered an opinion December 10, 1959, directing that judgment be entered affirming the award; judgment was so entered December 11, 1959. On December 14, 1959, appellee Perry filed a motion for a new trial. The matter lay dormant on the

docket until August, 1963, when Smith's counsel moved that the case be submitted for judgment; it was so submitted by order dated August 24, 1963. On June 16, 1966, the circuit court entered a new judgment, sustaining the motion for new trial, setting aside the judgment of December 11, 1959, setting aside the award of compensation, and denying Smith's claim for compensation. It is from the latter judgment that this appeal is prosecuted.

Perry operated a small coal mine near Cumberland, for which operation he obtained a license as prescribed by KRS 351.175, in February, 1956. Among the few employees in the mine were Beaufort Hodge and Vernon Coots. Perry elected to operate under the Workmen's Compensation Act, KRS Chapter 342, and obtained compensation insurance. Sometime in August, 1956, Perry made an oral "deal" with Hodge and Coots to lease the mine to them. It seems clear that this arrangement was made very shortly before Smith first was employed at the mine. Smith quit the job after two weeks, but was re-employed on November 8, 1956; he sustained the disabling accident on November 14, 1956. According to Smith's testimony, he considered that he was employed by The Perry Coal Company, although his actual negotiations for employment were with Hodge and Coots. Smith testified that he was informed by Hodge that the company carried workmen's compensation insurance incident to each of his periods of employment.

In substance, Coots testified that he and Hodge had an oral agreement with Perry whereby they were to obtain a written lease from Perry; that Coots did not regard the agreement as effective until it was evidenced by a written instrument; that he and Hodge operated the mine "for Perry," under Perry's license, from August, 1956, until November 21, 1956, at which latter date a written lease between Perry and Coots and Hodge was signed. The coal extracted from the mine pursuant to the operation supervised by Coots and Hodge was delivered at the tipple to trucks owned and operated by Perry; the coal was delivered in Perry's trucks to a ramp operated by Carolina Coal Sales Company, the purchaser of the coal. Perry arranged the sale of the coal to Carolina Coal Sales. Although there is no showing that Perry was compensated by Carolina Coal Sales for his activities at the ramp, it appears that he substantially supervised the ramp as a sort of "straw boss."

Shortly after the claim for compensation was filed Perry lodged for record the November, 1956, written lease between himself and Coots and Hodge; he had been party to numerous leases, he said, but this was the first and only one that he had ever caused to be lodged for record.

On the date when Smith was injured Perry accompanied Hodge or Coots to the hospital at Lynch to see about Smith. There was testimony (denied by Perry, and his denial was corroborated) that Perry stated that he was responsible for the hospital bill of Smith.

Coots testified that Perry told him that Perry would maintain the compensation insurance and "take care of the taxes." According to Coots, Perry " * * * said he'd just run it in his name until the first of the year."

With this much of the background, it is appropriate to reiterate that our problem here is not one that requires us to determine whether we are convinced that Perry was Smith's employer at the time of the injury—rather, we are to determine whether the evidence in behalf of Perry was so clear-cut and convincing that we could justifiably conclude that the Board acted erroneously as a matter of law in finding to the contrary. Lee v. International Harvester Co., Ky., 373 S.W.2d 418; Columbus Mining Co. v. Childers, Ky., 265 S.W.2d 443, 445.

Admittedly, the Board could have found for Perry. He disclaimed ownership and bolstered his disclaimer with evidence that

he had cancelled his compensation insurance shortly after his oral "deal" with Coots and Hodge. He insisted that he exercised no control over the mining operation at any time subsequent to the August "deal;" that he had no part in employing Smith, nor any control over Smith. He pointed to the lease as finally written (it was prepared for him by a notary). The paper bears the typed date of November 10, 1956, in its caption, although it concludes with a clause as follows:

"Witness our hands this —— day of November, 1956." Both Hodge and Coots testified that it was not signed on November 10, but was signed by one of them on November 20, and the other on November 21.

It was shown that regular inspections were made by mining inspectors during 1956, and that the reports of these inspections were mailed to Perry. He did not reply to any of them, nor did he advise the officials that he no longer operated the mine. He permitted the operation of the mine under his license; he did not inform the Unemployment Compensation Commission of a change in ownership until early 1957. There was evidence that Perry stopped the hauling of coal from the mine by another trucker, and that he controlled the matter of its sale.

We think the circumstances presented in this record are sufficient to support the Board's factual finding that Perry was the true owner and operator of the mine, and thus Smith's employer, at the time of the disabling accident. It follows, of course, that we are not persuaded that the evidence in behalf of Perry was so clear-cut and convincing as to impel a finding in his behalf.

We are not able to say that the written lease is dispositive of this litigation. In Coleman v. Baker, Ky., 382 S.W.2d 843, we pointed out that a written contract was not conclusive of the question whether certain workmen were servants or independent contractors. Indeed, the attendant circumstances of the execution and recording of the written lease in the case at bar furnish basis for a reasonable inference that Perry was attempting to preclude Smith's claim. The trier of the fact had basis for ascribing significance to Perry's actions as refuting the words of Perry's testimony.

Coots and Hodge, uneducated young men with little or no capital, testified that they did not regard themselves as "owners" of the mining operation so long as they had no written lease. We are mindful of the rule that a plea of the statute of frauds is available only to parties sought to be charged in the contract, and may not be relied on by a person who is not party to the agreement. Jackson v. Coons, 285 Ky. 154, 147 S.W.2d 45, 132 A.L.R. 1403. But we do not have that situation here. In this case Coots and Hodge were parties to the agreement and they testified that they did not consider themselves as operating under it until it became formally evidenced by a written instrument. They deposed that in the interim between the August "deal" and the November signing they were merely operating for Perry, on his license and in his name, and that Perry had said he would maintain compensation insurance.

It is noteworthy that a sharp discrepancy appears in evidence as to when the paper was actually signed; Perry insists that it was signed November 10, which is the date typed in the caption, but Coots and Hodge are equally certain that it was not then signed. They are somewhat corroborated in this by the blank space left for the date at the close of the instrument. Coots and Hodge were sure that the paper was not presented to them until after Smith's injury on November 14.

Appellee Perry correctly cites precedents reflecting that it is incumbent on the claimant to establish the essential facts entitling him to recovery. Certainly, the relationship of employer-employee is an essential fact in a case of this type. See Ratliff v. Redmon, Ky., 396 S.W.2d 320, wherein is found a recent résumé of the

applicable principles and guidelines. Appellee contends that Ratliff makes it plain that the right to control the details of the work is the primary test, and that Perry had no such right. We are not able to accept that contention, however, because Perry clearly had full control until he effectively transferred it to Coots and Hodge. He insists he transferred everything to them in August, 1956—they take a contrary position. The Board was persuaded by their evidence and had a legal right to be. The evidence, direct and circumstantial, amply supports the Board's factual finding, hence the circuit court erred in setting aside the Board's award.

The judgment is reversed with directions to reinstate the judgment entered December 11, 1959, affirming the award.