**J. R. GRIFFITH, d/b/a Tuffy's Welding Shop, Appellant,**

**v.**

**Arnold Ray BLAIR et al., Appellees.**

Court of Appeals of Kentucky.

June 21, 1968.

W. A. Johnson, Paintsville, for appellant.

Charles A. Taylor, Perry & Taylor, Paintsville, for appellee.

WADDILL, Commissioner.

The sole question on this appeal is whether the circuit court correctly found that the evidence compelled the Workmen's Compensation Board to reopen the case and enlarge appellee's compensation benefits.

Appellee, Arnold Ray Blair, sustained work-connected injuries on June 29, 1959, while employed by appellant, J. R. Griffith, d/b/a Tuffy's Welding Shop. The injuries consisted of a severe laceration on his right forearm and bruises on his back, side and neck. Upon the hearing of the claim for compensation medical experts gave estimates of appellee's disability ranging from 5% to 100%. On September 7, 1960, the Kentucky Workmen's Compensation Board awarded appellee compensation benefits based upon the finding that he had sustained nine weeks of total temporary disability, followed by 50% permanent disability.

On November 28, 1961, appellee filed a motion with the board to reopen the case alleging that, since the entry of the award, there had been a change in his physical condition which had further disabled him. KRS 342.125. The board sustained appellee's motion and conducted a hearing to determine whether there had been a change in appellee's condition that would entitle him to an award greater than the award based on 50% permanent disability. Appellee, who was 34 years of age at the time of the accident and a constructural steelworker by occupation, testified that, following his recovery from the injuries he sustained on June 29, 1959, he returned to work during August 1959 at the same wages he previously received; that, subsequently, the condition of his back gradually became worse, causing him to quit work on November 2, 1961. He stated that, on November 16, 1961, Dr. Paul Ross and Dr. Franklin Jelsma, neurosurgeons, performed an operation on him and removed a herniated disc; that during March 1962, he had sufficiently recovered from the operation to return to work; that he obtained a new job and that this employment paid him greater wages than he had formerly received.

At the hearing on the motion to reopen the award, several physicians testified concerning appellee's condition. Dr. F. M. Picklesimer was of the opinion that appellee had 75% functional disability immediately after the accident, which was primarily attributed to the injury to appellee's back. This physician stated that, even though the operation on appellee's back was successful and he was able to work, his functional disability had increased and is now 100%. Dr. Glen Powell estimated appellee's disability, before and after his back operation, at 100%. Dr. A. B. Carter

and Dr. E. G. Skaggs originally rated appellee's disability at 50%; however, they now believed his condition had worsened and that he was presently 75% permanently disabled. Dr. Paul Ross, one of the neurosurgeons who performed the operation on appellee, testified that appellee made a satisfactory recovery and was released from medical care on May 18, 1962. Dr. Ross was of the opinion that, although appellee could perform the ordinary duties of a structural steelworker, including climbing and related activities, his vocational disability was 20%.

The compensation board, in a written opinion, observed that, since the removal of the herniated disc, appellee had been employed as a structural steelworker and had been receiving wages greater than those he had been paid prior to his back injury. The board held that its former award, based upon the finding that appellee had sustained 50% permanent disability, was correct and that there had been no change in appellee's condition that would entitle him to a greater award of compensation.

Appellee took an appeal to the circuit court, KRS 342.285, and a judgment was entered remanding the case to the board with directions to enter an award granting appellee compensation allowable for total permanent disability. The circuit court, in a written order, reviewed the evidence and concluded that appellee was totally and permanently disabled to perform arduous duties required of a structural steelworker.

 The party seeking to increase an award has the burden of proving that there has been a change of condition resulting from the original compensable injury. KRS 342.125; Jude v. Cubbage, Ky., 251 S.W.2d 584. In this connection the rule has been stated that, where the board has found against the claimant, who had the burden of proof and the risk of not persuading the board in his favor, the only issue before the circuit court is whether the evidence was so strong as to compel a finding in claimant's favor—so persuasive that it was clearly unreasonable for the board not to be convinced by it. Semet-Solvay Division of A. C. Corp. v. Workmen's Compensation Board, Ky., 410 S.W. 2d 405.

Appellee concedes that, where the evidence is conflicting, the board may choose the evidence it believes to be convincing and base its findings thereon. However, appellee contends that there is no conflict in the evidence because Dr. Ross' testimony is without probative value and he assigns the following reasons: Dr. Ross' estimate of 20% disability was not as to functional disability but as to appellee's vocational disability and, therefore, should be given no credence as his opinion usurped the board's prerogative to determine appellee's employment disability; Dr. Ross' opinion that appellee was 20% disabled to perform work of an ordinary welder but was not disabled to perform the duties required of a structural steelworker should not be accepted since the latter job requires more strenuous work as a matter of common knowledge; that since appellee's disability has been fixed by the board at 50%, a lesser estimate is unacceptable as a matter of law, and finally, since Dr. Ross had not seen appellee prior to the board's award he had no basis upon which to determine whether there had been a change in appellee's condition.

 We agree with appellee's contention that a medical expert may not usurp the function of the board by giving testimony which, in the form of a medical opinion, expresses a legal conclusion. 100 C.J.S. Workmen's Compensation § 536. However, we hold that an opinion expressed by a medical expert upon matters requiring special knowledge within his own field, such as whether the injured employee would be unable to perform certain work or that the employee was 50% disabled for his work, (provided, of course, that the physician is acquainted either by experience or through a hypothetical question with the physical demands of that particu-

lar work), is not inadmissible as an invasion of the province of the board. Apparently it is necessary to repeat what was said on this subject in Kilgore v. Goose Creek Coal Co., Ky., 392 S.W.2d 78. We quote from the pertinent part of that opinion:

"Appellant's brief points out 'that the sole function of a medical examiner is to evaluate impairment of bodily function and that it is a legal or administrative task to make an evaluation of occupational disability.' That is true, and in a number of recent cases it has been necessary to reverse the board's judgments because of an apparent misconception in this respect. Cf. Deby Coal Company v. Caldwell, supra [Ky., 383 S.W.2d 905]. If the doctor is willing, pursuant to appropriate questioning, to estimate a man's percentage of incapacity as a coal miner, for example, that is well and good. Certainly it would be helpful. But in the last analysis it is not his decision to make; it is a nondelegable responsibility of the board alone. Whatever may be the degree of physical impairment established by the medical testimony, the board must make its own estimate, from the evidence as a whole, of whether and to what degree that impairment actually disables the claimant from performing the duties of his occupation. Percentage of physical limitation is a medical question; percentage of disability is not."

■ The fact that Dr. Ross had not seen appellee prior to the time appellee obtained his original compensation award and, therefore, did not know what appellee's condition was at that time does not destroy the probative value of Dr. Ross' testimony fixing the degree of appellee's disability at a later time. No comparison of appellee's condition immediately after his injury with his present condition was necessary to evaluate his present disability. We also find no merit in the contention that once the board has fixed the degree of disability such finding cannot later be changed on a motion to reopen the case. Nor is there any merit in the argument that Dr. Ross' opinion that appellee's injuries have impaired him as a welder but not as a steelworker is so contrary to common knowledge that its probative value was destroyed. Such a statement may affect his credibility as a witness but such an opinion of this character is admissible.

■ The testimony of Dr. Ross, when considered in light of the other medical evidence, obviously created an issue of fact concerning the extent of appellee's present disability. Hence, the determination of that issue was not one of law but was one for the board to resolve as fact finder. Congleton Brothers, Inc. v. Farmer, Ky., 399 S.W.2d 722. Therefore, the circuit court was required to accept the board's finding of fact and to enter a judgment upholding the order of the board.

The judgment is reversed with directions to set it aside and to enter a new judgment upholding the board's order.

All concur.