John W. YOUNG, Commissioner of Labor, Commonwealth of Kentucky, Custodian of Special Fund and Inland Steel Company, Appellants,

v.

Earl DALE and Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

Feb. 28, 1969.

Rehearing Denied Nov. 21, 1969.

John B. Breckinridge, Atty. Gen., Frankfort, Martin Glazer, Thomas R. Emerson, Dept. of Labor, Frankfort, Harry C. Campbell, Pikeville, for appellants.

Dan Jack Combs, Reed D. Anderson, Combs & Anderson, Pikeville, for appellees.

STEINFELD, Judge.

This is a claim made by Earl Dale under the Workmen's Compensation Act for total permanent disability resulting from an alleged occupational pulmonary disease. He contends that payments are due him from his last employer, Inland Steel Company (KRS 342.095) and from the Special Fund (KRS 342.120). KRS 342.095(1) authorizes recovery for an occupational disease and KRS 342.316(1) defines an " 'Occupational Disease' as * * * (one) arising out of and in the course of the employment." It excludes "Ordinary diseases of life to which the general public is equally exposed outside of the employment * * * except where such diseases follow as an incident of an occupational disease as defined in this section."

Earl Dale, 57 years of age, had worked in the coal mines for several employers a total of approximately 40 years. He claims that his "pulmonary occupational disease" began on February 4, 1966. He filed his claim with the board on December 20, 1966. The principal issue is the nature of his illness and the cause thereof. The board had the benefit of testimony from six eminently-qualified physicians after which it ruled that: "Plaintiff is not affected by silicosis or any other form of pneumoconiosis and has no compensable disability as the result of such disease." Dale appealed to the Floyd Circuit Court which said: "While it may be true that plaintiff is neither suffering from silicosis or soft coal workers pneumoconiosis it is abundantly clear from a consideration of all the substantive evidence of probative value that his pulmonary condition was the direct result of some forty years exposure to the hazards of an occupational pulmonary disease and the Board erred in not making such a finding." From a judgment directing the board to award the benefits claimed by Dale, Inland Steel Company and the Special Fund appeal. We reverse.

Dale contends that the evidence was overwhelming in his favor and as a matter of law his claim should have been sustained. The medical testimony would have been sufficient to uphold the board had it found in favor of Dale. Roark v. Alva Coal Corp., Ky., 371 S.W.2d 856 (1963). One doctor said: "* * * he had occupational dust disease of the lungs, that is to say, silicosis or coal workers' pneumoconiosis and he had pulmonary emphysema and chronic bronchitis, and we presume his emphysema and bronchitis were secondary to occupational dust disease of the lungs." Another physician stated that Dale was suffering from "Stage two pneumoconiosis". A third said "I interpret the nodulation to represent a second stage silicosis with mild emphysema, and I think he has a captive right lung." He also said that "part, if not all of the emphysema, is due to" Dale's "silicotic disease".

The board appointed a physician to examine Dale (KRS 342.315) and ordered that the parties be given the opportunity to take his deposition. He reported "No x-ray evidence of silicosis" and wrote "It is possible that exposure to dust in the mines could have been a contributing factor in his disability". When giving his deposition he was asked whether Dale was physically able to be employed as an underground coal miner and he answered that he was not. The interrogation continued as follows:

"8. Why, Doctor?

A. Because he has bronchitis and pulmonary emphysema and that further exposure to dust would be hazardous to him.

9. Do you feel that his past exposure over 40 years has contributed to his pulmonary problem which you found him to be suffering from?

A. It is entirely possible that it could be, yes, sir.

10. Doctor, in view of his history and in view of your physical findings, what in your opinion is the most

likely cause of the pulmonary problem which you found Mr. Dale to be suffering from?

A. I believe his most likely cause is his exposure to dust in the mines."

Inquiry was then made "Is the chronic obstructive pulmonary disease secondary to the chronic bronchitis a disorder that the population generally or at large is exposed to and notwithstanding occupation?" The answer was "yes". The board could consider this statement as significant. KRS 342.316(1); Berry v. Owensboro Ice Cream & Dairy Products, Ky., 376 S.W.2d 302 (1964).

We now turn to the testimony of other physicians to determine whether upon the whole of the evidence it was unreasonable for the board to disallow the claim. Assuming arguendo that the claimant's evidence, standing alone, would require a favorable finding, we look to the weight and effect of the countervailing evidence presented by the physicians for the defense. Cf. Lee v. International Harvester Co., Ky., 373 S.W.2d 418 (1963). One said: "There is no x-ray evidence of pneumoconiosis of any type, no active tuberculosis. There is a mild emphysema in each base." The second confirmed the absence of x-ray evidence of pneumoconiosis and stated that emphysema was the cause of Dale's "decreased capacity to do physical work". He was asked, "Doctor, could you state with a degree of medical certainty if the emphysema which you detected and diagnosed in Earl Dale is or is not the result of his coal mining history?" He answered, "In my opinion it is not."

The employer contends that the evidence was not so overwhelming as to require, as a matter of law, that the board rule for the claimant and that the circuit court could not substitute its judgment on questions of fact. Cited in support of their positions are Columbus Mining Co. v. Childers, Ky., 265 S.W.2d 443 (1954) and Lee v. International Harvester Co., Ky., 373 S.W.2d 418 (1963).

The court was powerless to disturb the decision of the board unless the evidence of the claimant was "* * * so clear cut and convincing that" the court "could justifiably conclude that the Board acted erroneously as a matter of law * * *". Columbus Mining Co. v. Childers, supra. Also see Lewis v. United States Steel Corp., Ky., 398 S.W.2d 490 (1966) and Lee v. International Harvester Co., supra. It appears to us that the weight of the evidence was in favor of Dale, nevertheless, we cannot hold that the board acted erroneously as a matter of law because the testimony of two well qualified physicians was that the ailment was emphysema which was not the result of exposure to dust in the mines. Roark v. Alva Coal Corp., Ky., 371 S.W.2d 856 (1963); Horton v. United States Steel Co., Ky., 384 S.W.2d 73 (1964); Dobbs v. Inland Steel Co., Ky., 402 S.W.2d 88 (1966). The circuit court erred in setting aside the decision of the board. Griffith v. Blair, Ky., 430 S.W.2d 337 (1968).

The judgment is reversed with directions to affirm the decision of the Workmen's Compensation Board.

All concur, except HILL, J., who dissents.

EDWARD P. HILL, Judge (dissenting).

One of Dale's three highly qualified physicians testified Dale has an "occupational dust disease of the lungs, that is to say, silicosis or coal workers' pneumoconiosis and he had pulmonary emphysema and chronic bronchitis, and we presume his emphysema and bronchitis were secondary to occupational dust disease of the lungs." Another physician testified Dale suffers from "Stage two pneumoconiosis," and the third stated that: "I interpret the nodulation to represent a second stage silicosis with mild emphysema, and I think he has a captive right lung," and that "part, if not all of the emphysema, is due to" Dale's "silicotic disease."

The physician appointed by the board testified that Dale has "bronchitis and pulmonary emphysema and that further exposure to dust would be hazardous to him." He was asked and answered the two following questions:

"9. Do you feel that his past exposure over 40 years has contributed to his pulmonary problem which you found him to be suffering from?

"A. It is entirely possible that it would be, yes, sir.

"10. Doctor, in view of his history and in view of your physical findings, what in your opinion is the most likely cause of the pulmonary problem which you found Mr. Dale to be suffering from?

"A. I believe his most likely cause is his exposure to dust in the mines."

To me this evidence is so overwhelming as to require a finding for Dale by the board, notwithstanding that there was some contradictory evidence for the appellants.

An occupational disease is compensable under KRS 342.095(1), and KRS 342.316(1) defines a disease as follows:

"* * * [A] disease arising out of and in the course of the employment. * * *.

"A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident to the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease shall be incidental to the character of the business and not independent of the relationship of the employer and employe. The disease need not have been foreseen or expected but, after its contraction, it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

Webster's New International Dictionary, 2d, p. 746, defines a disease thus:

"A condition in which bodily health is seriously attacked, deranged, or impaired; sickness; illness; as, mortality from disease; a particular form or instance of such condition; a malady; an ailment; as, infectious diseases. Pathologically, disease is an alteration of state of the human body or any animal or plant organism, or of some of its organs or parts, interrupting or disturbing the performance of the vital functions, or a particular instance or case of this; any departure from the state of health presenting marked symptoms; also, a specific kind of such alteration; a particular ailment having special symptoms or causes; as Addison's disease, Bright's disease, Panama disease, etc. Various forms of disease may be caused by parasites, filtrable viruses, and nutritional, *environmental*, or inherent deficiencies." (Emphasis ours.)

Notwithstanding some prior opinions to the contrary, I do not think the legislature intended to require a compensable "disease" to have been the result of "a traumatic injury sustained by employe by accident." Under the "occupational disease" statute (KRS 342.116), no proof should be required that the diseased employee received a "traumatic injury by accident." The inception of most diseases is a slow, stealthy, gradual process. My theory in this connection finds further support in KRS 342.316(4), which is quoted:

"In claims for compensation due to the occupational disease of silicosis or any other compensable pneumoconiosis it must be shown that the employe was exposed to the hazards of the disease in his

employment within this state for at least two years immediately next before his disability or death."

For these reasons I would affirm the judgment of the trial court, directing an award of full compensation.