Nannie HUNTER, etc., Appellant,

v.

**TURNER ELKHORN MINING COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

June 26, 1970.

Robert J. Greene, Perry & Greene, Paintsville, for appellant.

Fred G. Francis, Howard, Francis & Howard, Prestonsburg, Thomas R. Emerson, Dept. of Labor, Frankfort, J. Keller Whitaker, Frankfort, Director, Workmen's Compensation Board, for appellees.

PALMORE, Judge.

This is an appeal by the widow and administratrix of a deceased coal miner from a judgment affirming a denial of workmen's compensation for his disability and death.

The decedent, Charles Henry Hunter, filed a compensation claim on March 28, 1967, stating that he had become affected by the occupational disease of silicosis on February 27, 1967. He died on April 28, 1967, whereupon the appellant was substituted as claimant.

Hunter was 53 years of age when his claim was filed. According to Mrs. Hunter's testimony he began to have smothering spells and chest pains in December of 1966 but would get over it and did not seek medical treatment until February 27, 1967, when he had a severe attack of the same nature and was taken to the hospital. He remained in the hospital for 12 days and was treated by Dr. Jerry Fraim. Between the time he entered the hospital and the date of his death two months later four sets of X-ray photographs were taken, and except for the testimony of Dr. Fraim these films provided the principal basis for all of the medical opinions in the case.

In brief, the immediate and direct cause of Hunter's hospitalization was congestive heart failure, for which he was again admitted to the hospital from April 17 to April 22, 1967. It seems clear also that an arteriosclerotic heart condition was the precipitating cause of his death. However, most of the doctors agreed that the X-ray films showed evidence of stage II pneumoconiosis as well as the cardiac condition, and the dispositive factual issue is whether the pneumoconiosis was a contributing factor in his disability and death.

There was no evidence that Hunter's physical infirmities—whatever they were—had disabled him in the sense of interfering with his ability to work prior to the onset of his difficulty on February 27, 1967.

· It was the opinion of Dr. Fraim that Hunter had "not only arteriosclerotic heart disease, but also silicosis" and that the impairment of the pulmonary function resulting from the latter disease "did contribute significantly to the man's demise."

Testifying for the Special Fund, Dr. William H. Anderson, a specialist in diseases of the chest and full-time faculty member of the University of Louisville School of Medicine, had reviewed the X-ray films and concurred in the objective findings made by Dr. Fraim. Nevertheless, it was his opinion that "the disabling feature * * * was heart disease and that the pneumoconiosis * * * was an incidental finding, and certainly we know that category II pneumoconiosis does not cause or contribute to heart disease. And I rather * * * it would be my opinion that if this man did indeed die between the last film on the 17th of April, 1967, and the present time that the most likely cause of death was heart disease and I would not think that the category II pneumoconiosis would be a significant and contributing factor." In his written report, which was made a part of the evidence, Dr. Anderson said that Hunter "probably had relatively little difficulty with his pneumoconiosis * * *. The primary significance of a category II pneumoconiosis is that a man who has this should not have further exposure to silica-containing dusts but it neither predisposes him to heart trouble nor makes heart trouble worse if he happens to have it."

On cross-examination Dr. Anderson conceded that some people who have category II pneumoconiosis suffer a resulting decrease in arterial oxygen, a condition called hypoxia, which, if it exists to a significant degree, would add to the problems of a heart disease and "decrease the further amount of cardiac reserve the individual might have." Whether Hunter was so afflicted, of course, he did not know, and there is nothing in his testimony under cross-examination suggesting a retreat from his previously stated opinion which was in substance that the pneumoconiosis probably did not contribute significantly to Hunter's disability and death.

The other medical opinions conflicted in varying degrees, and against some of them technical objections have been raised, but we find it unnecessary to consider them. The claimant's burden of proof was not met to the satisfaction of the board, which found "that there was no causal relation between the decedent's death and his employment with the defendant. The decedent met his death by reason of a coronary thrombosis, and the decedent's lung condition did not have any connection with the death." We think that Dr. Anderson's testimony alone raised sufficient doubt as to the causal significance of Hunter's lung condition to put the issue clearly within the fact-finding province of the board. As observed in Cavin v. Lake Construction Company, Ky., 451 S.W.2d 159, 161 (1970), "there is a vast difference between what the board is free to do and what it can be forced to do under a given state of evidence." See also Young v. Dale, Ky., 446 S.W.2d 288 (1969).

The judgment is affirmed.

All concur.