Linda TUCKER, Appellant,

v.

TRI–STATE LAWN & GARDEN, INC., John Calhoun Wells, Secretary Labor Cabinet (Special Fund) and Kentucky Workers' Compensation Board, Appellees.

Court of Appeals of Kentucky.

March 14, 1986.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court May 13, 1986.

Septtimous Taylor, Jones, Harrington & Taylor, Owensboro, for appellant.

Jerry L. Johnson, Elliott & Johnson, Owensboro, for appellee, Tri-State Lawn & Garden.

John E. Stephenson, Labor Cabinet, Louisville, for appellee, Special Fund.

LESTER, Judge.

This is an appeal from a judgment affirming an order of the Workers' Compensation Board dismissing appellant's claim.

Linda Tucker hurt her back on August 1, 1978, while in the employment of appellee, Tri-State Lawn and Garden, Inc. She notified the employer of the incident but did not "miss any substantial amount of work." However, even though she claimed she had continuing back problems for which she was seeing a doctor, she failed to relate this to Tri-State. In December, 1979, Tucker left her employment and the following month, she took a clerical position with Construction Machinery Corporation where she remained at least until the filing of her application for adjustment of her claim.

In January, 1982, appellant again experienced back problems for which she underwent conservative treatment. However, in October of that year, it became necessary for Dr. James Carothers to remove a herniated disc which he indicated, based upon his observation and surgical procedure, was a fresh rupture of less than six weeks duration as of the time of removal. Interestingly enough, Linda Tucker failed to mention the 1978 incident to the orthopedic surgeon contenting herself with merely relating that she started having back and right leg pain in January, 1982. As to a causative relationship between the 1978 and 1982 problems, Dr. Carothers characterized it as a "possibility."

The Board, in dismissing the claim, found that the employee had "failed to prove a sufficient relationship between the work-related injury on August 1, 1978, and the subsequent herniated disc surgery over four years later." Upon appeal, the circuit court pointed out:

In her Petition for Appeal, Appellant claims '. . . there was no probative and

material evidence within the record to support the conclusion of the Board that the Appellant's disability lacked a direct nexus with her work-related injury of August 1, 1978.' While that may roughly paraphrase the test where the Board has made an Award, it is not the test where the Board has denied benefits. Rather it is whether the evidence of record compels a contrary conclusion that an award should have been made. The Appellant, of course, bears the risk of non-persuasion. After review of this record, the Court is of the opinion the evidence of record does not compel a contrary conclusion to that of the Board.

Upon appeal to this Court, the cause was assigned to a panel which submitted a draft opinion, designated "to be published," which purported to reverse the Daviess Circuit Court relying upon the reasoning that:

The legislature, by enacting KRS 342.285 and 290, has carefully and succinctly stated the standard which the trial and appellate courts are to employ when reviewing the correctness of the board's orders and awards. Neither of these sections require a worker to prove his case by overwhelming evidence that would compel a finding in his favor.

In light of the foregoing, the case was submitted to the entire court in order that its position regarding the "substantial" as opposed to the "compelling" evidence rule in compensation law be resolved. This, of course, involves the more significant issue of our adhesion to stare decisis.

On at least three occasions, this Court has attempted to thwart the "compelling evidence" principles which date back to *Lee v. International Harvester Co.*, Ky., 373 S.W.2d 418 (1963) and *Columbus Mining Co. v. Childers*, Ky., 265 S.W.2d 443 (1954). This effort has been made most recently in three Court of Appeals opinions designated to be published in *Burkhardt v. Paramount Foods, Inc.*, (Nov. 2, 1984); *Francis v. Center Coal Co.*, (August 2, 1985) and the present appeal. Our court of last resort has reaffirmed its adherence to the rule in *Paramount Foods, Inc. v. Burk-*

*hardt*, Ky., 695 S.W.2d 418 (1985), while reversing this Court's views to the contrary. The fact that we stated a position in at least three cases does not necessarily make it so, which brings to mind the words of Charles Lutwidge Dodgson writing under the pseudonym of Lewis Carroll in *Alice in Wonderland:*

I told you thrice, what I tell you three times is true

as well as the same author speaking through Humpty Dumpty to Alice in *Through the Looking Glass:*

I told them once, I told them twice [THRICE] they would not listen to advice.

The doctrine of *stare decisis et non queita movere* (to stand by precedent and not to disturb settled points) was embedded in the law prior to the admission of this Commonwealth to the Union. Of those who question its validity, we would ask, as did Attorney Harper representing Erick Bollman during the February Term, 1807, of the Supreme Court of the United States:

Shall it be said that each individual judge may rightfully disregard the decisions of the court to which he belongs and set up his own notions, his prejudices, or his caprice, in opposition to their solemn judgment? This is not the principle of our law; this is not the tenure by which we hold our rights and liberties. Stare decisis is one of its favorite and most fundamental maxims. It is behind this wise and salutary maxim that courts and judges love to take refuge, in times and circumstances that might induce them to doubt of themselves, to dread the secret operation of their own passions and prejudices, or those external influences, against which, in the imperfection of our nature, our minds can never be sufficiently guarded. In such times and circumstances, a judge will say to himself, "I know not how far my judgment may be blinded or misled by my own feelings or the passions of others, by the circumstances of the moment, or the views and wishes of those with whom I am connected, but here is a precedent established

under circumstances which exclude all possibility of improper bias. This precedent is, therefore, more to be relied on than my judgment; and to this I will adhere as the best and only means of protecting myself, my own reputation, and the safety of those who are to be affected by my decision, against the danger of those powerful, though imperceptible influences, from which the most upright and enlightened minds cannot be considered as wholly exempt."

Mr. Harper concluded his presentation with yet another inquiry, as well as his view, namely:

Again let it be asked, is not the law to be considered as settled by these repeated decisions? Are we still, as to this most important point, afloat on the troubled ocean of opinion, of feeling, and of prejudice? If so, deplorable indeed is our condition.

Misera est servitus, ubi lex est vaga aut incerta.

This great principle, *stare decisis*, so fundamental in our law, and so congenial to liberty, is peculiarly important in our popular governments, where the influence of the passions is strong, the struggles for power are violent, the fluctuations of party are frequent, and the desire of suppressing opposition, or of gratifying revenge under the forms of law and by the agency of the courts, is constant and active. *Ex Parte Bollman and Ex Parte Swartwout*, 4 Cranch 75, 89 2 L.Ed. 554, 559 (1807).

Lest it be argued that stare decisis has no place in this jurisdiction we need go no farther than refer to *Ballard County v. Kentucky County Debt Commission*, 290 Ky. 770, 162 S.W.2d 771 (1942), wherein the court quoted with approval 14 Am.Jur.P. § 61 at 284, 285:

While, perhaps, it is more important as to far-reaching juridical principles that the court should be right than merely in harmony with previous decisions, in the light of higher civilization, later and more careful examination of authorities, wider and more thorough discussion and more mature reflection upon the policy of the law, it nevertheless is vital that there be stability in the courts in adhering to decisions deliberately made after ample consideration. Parties should not be encouraged to seek re-examination of determined principles and to speculate on a fluctuation of the law with every change in the expounders of it. As to many matters of frequent occurrence, the establishment of some certain guide is of more significance than the precise form of the rule, and substantial justice may often be better promoted by adhering to an erroneous decision than by overthrowing a rule once established.

 It lies within the memory of most of the active members of the bench and bar that, insofar as this level of the Court of Justice is concerned, the primary purposes of the intermediate appellate tribunal were to afford every litigant the right of an appeal and to correct any errors committed at the trial level. Conversely, it is not our function to establish new rules of law or enunciate changes in Kentucky jurisprudence. This view is best capsulized in SCR 1.030(8)(a) to the effect:

The Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court.

If we, or any one of us, disagree with an established rule of law, then we point out its fallacy but simultaneously adhere to it. In this particular case, for us to announce in the early part of 1986 anything contrary to the June, 1985, opinion in *Paramount Foods, supra*, is violative of our duty and function.

We have listened with some interest to the argument that Section 2 of our Constitution requires that we reach a result which would abolish the compelling evidence rule. We content ourselves with saying that we find no arbitrary power being exercised over the rights of freemen in the requirement that a workers' compensation claimant must have adduced compelling evidence to overcome an adverse finding of the Board. We must not overlook

the fact that an applicant for compensation does not have a right to it but only the privilege of asking for it by virtue of legislative enactment. Other constitutional contentions we consider to be without merit.

HAYES, C.J., and CLAYTON, COOPER, DUNN, GUDGEL, HOWARD, WHITE* and WILHOIT, JJ., concur.

HOWERTON, Judge, concurs in result only.

MILLER and REYNOLDS, JJ., abstain.

COMBS and McDONALD, JJ., dissent.

COMBS, Judge, dissenting.

I respectfully, but strongly, dissent. The majority opinion is a witty and well-written dissertation on the doctrine of *stare decisis. Stare decisis* is a well-established doctrine to which this writer subscribes wholeheartedly, where appropriate. The majority of my brethren feel that they are inexorably bound by the decision of our Supreme Court in the case of *Paramount Foods, Inc. v. Burkhardt,* Ky., 695 S.W.2d 418 (1985).

The issue in this case is much larger than the question of *stare decisis.* It involves the very fundamental principle of separation of powers. In other words, is the judiciary's unconstitutional exercise of legislative power legitimized by the doctrine of *stare decisis?*

Section 27 of the Kentucky Constitution divides our government "into three distinct departments", and confines each to "a separate body of magistracy, to-wit: *Those which are legislative, to one;* those which are executive, to another; *and those which are judicial, to another."* [Emphasis added].

Section 28 states that "[n]o person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others."

Our Workmen's Compensation Act is purely legislative. What provisions did the legislature make for appeals to the circuit court and to this Court? KRS 342.285 and KRS 342.290 are plain, clear, and unambiguous. The pertinent part of KRS 342.-285(3) states:

No new or additional evidence may be introduced in the circuit court ... but the court shall otherwise hear the cause upon the record as certified by the board and shall dispose of the cause in summary manner. The court shall not substitute its judgment for that of the board as to the weight of evidence on questions of fact, its review *being limited to determining whether or not:*

. . . .

*(d) The order, decision, or award is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record[.]* [Emphasis added].

The pertinent portion of KRS 342.290(1) dealing with appeals to this Court states:

The judgment of the circuit court shall be subject to appeal to the Court of Appeals. The scope of review by the Court of Appeals shall include all matters subject to review by the circuit court and also errors of law arising in the circuit court and upon appeal made reviewable by the Rules of Civil Procedure *where not in conflict with this chapter.* [Emphasis added].

The concluding phrase of KRS 342.290(1) makes it abundantly clear that the legislature did not ever intend to let the rules of this court thwart or interfere with the law as passed.

It took the vote of at least fifty-one members of the House of Representatives, and the vote of at least twenty senators, as well the signature of our Governor, to pass this Act in 1964. Those people in turn were elected by the citizens of this Commonwealth, and their verbal acts represent the public policy of this state. In view of

---

* This decision was reached and the opinion concurred in prior to Judge White's appointment to the Kentucky Supreme Court. Release of the opinion was delayed by administrative handling.

this painstaking procedure, and Sections 26, 27 and 28 of our constitution, is it not the height of presumption to think that seven or thirteen members of our appellate judiciary could legally override or modify the wishes of our citizenry? There is no express or implied basis for the majority's compelling evidence rule in any part of the Worker's Compensation Act. The effect of this rule is to ignore the plain and unambiguous provisions of KRS 342.285 and KRS 342.290 in blatant violation of Sections 27 and 28 of the Kentucky Constitution. By virtue of Kentucky Constitution § 26, the rule is void.

This dissenter authored the opinions in *Paramount Foods, Inc., supra, Francis, supra,* and the original opinion reversing in the present appeal. I do not intend to be obstinate, or obstreperous, but as long as our constitution contains Sections 26, 27 and 28, and as long as KRS 342.285(3)(d) and KRS 342.290 remain on our statute books, I shall be compelled to continue to apply the law as written. If the legislature repeals that part of subsection (d) calling for the clearly erroneous rule and replaces it with the compelling evidence rule, I would willingly adhere to the ruling in *Paramount.*

The clearly erroneous rule is nothing new to our judiciary as expressed in CR 52.01 since we adopted the new rules in the early fifties. The clearly erroneous rule is a well-established principle of review in all administrative law texts as well. *See* 2 Am.Jur.2d *Administrative Law* § 661 (1962). Under the clearly erroneous rule, the court may set aside a determination of fact "... when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at § 662.

I think it is significant that the en banc court did not conclude that the trial court and the Workmen's Compensation Board were not clearly erroneous in denying benefits. They simply held as in *Paramount* that the evidence did not compel a finding in favor of the claimant.

In the present case, the majority relies on the fact that the neurosurgeon considered the disk removed from appellant's back to be a "fresh rupture of less than six weeks duration" and that she "failed to mention the 1978 incident to the orthopedic surgeon." Appellant never contended that she ruptured her back when she hurt it on August 1, 1978. She testified that she had been in good health prior to the accident and that after the injury she experienced a great deal of pain and discomfort. Both the neurosurgeon on behalf of the appellant and Dr. Quader on behalf of the appellee, testified that the chain of events as related by appellant was consistent with their findings and their evaluations of impairment. Appellant testified that she "lifted a short block for a small engine for [a] walk-in customer". She stated that she experienced difficulty from that time on which became progressively worse.

Although it is obvious that the rupture occurred a few years later, neither the fund nor the employer seriously contended that there was no causal connection between the injury of August of 1978 and the subsequent rupture. In view of the uncontradicted lay and medical evidence, it is my opinion that the board's denial of benefits was clearly erroneous within the meaning of KRS 342.285(3)(d).

As stated earlier, *stare decisis* is an essential legal principle. However, a decision which contradicts and ignores a controlling statute is void by virtue of § 26 of the Kentucky Constitution and does not stand as a legal precedent within the doctrine of *stare decisis.*

For these reasons, I would reverse the judgment of the Daviess Circuit Court.

McDONALD, Judge, dissents by separate opinion.

McDONALD, Judge, dissenting.

I concur with the result reached by Judge Combs in his dissent, but for the following reasons:

KRS 342.285(3) is uncomplicated and plainly written. It limits appellate review

of factual issues to a determination of whether: "(d) The order, decision, or award is *clearly erroneous* on the basis of the *reliable, probative,* and *material evidence* contained in the whole record...." [Emphasis added.]

The dilemma confronting us, as an intermediate appellate court, is the language found in the latest of a series of cases, namely, *Paramount Foods, Inc. v. Burkhardt,* Ky., 695 S.W.2d 418 (1985), which states, "[T]he evidence must be so overwhelming as to compel a finding...." Thus, it is argued that our Supreme Court has superimposed a "compelling evidence" standard of review on the "clearly erroneous" standard as required by the statute.

This judicially fabricated standard of review arose first, I believe, in the opinion of *Blankenship v. Lloyd Blankenship Coal Co.,* Ky., 463 S.W.2d 62 (1971). In that opinion the court gave a history of KRS 342.285(3), the statute's various changes in the legislature, and a lengthy analysis of how substantial evidence relates to the burden of proof. The case states:

> Stated another way, if the whole evidence is such that the fact-finder cannot be *compelled* as a matter of law to find one way or the other, and in fact is unable to find one way or the other, the party with the burden of proof loses. [Emphasis added.]

Almost immediately on the heels of *Blankenship* is *Smyzer v. B.F. Goodrich Chemical Company,* Ky., 474 S.W.2d 367 (1971), with a substantial evidence standard. It states:

> Although a court cannot substitute its evaluation of the weight and credibility of the evidence for that of the Workmen's Compensation Board, nevertheless, the findings of fact of the board when it decides in favor of the claimant must be *supported by substantial evidence.* Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men. [Emphasis added.]

The Supreme Court, in its judicial function of interpretation of statutes, has absolute authority to tell the lower courts what statutory language means. It may interpret "clearly erroneous," as found in KRS 342.285(3)(d), to mean "compelling evidence" or "substantial evidence" or "material evidence" or "clear and convincing evidence" or what have you, but my review does not show that the statute has been so construed.

The cases, the last of which is *Paramount Foods, Inc., supra,* have interpreted other cases; however, KRS 342.285(3)(d) has not been specifically construed by the Supreme Court. That leaves us in a bind.

It is noteworthy by its absence that none of the opinions cited by the majority refer to KRS 342.285(3)(d) in the body of the opinions. In fact, the majority cite *Columbus Mining Co. v. Childers,* Ky., 265 S.W.2d 443 (1954), which is more in keeping with the dissent. Therefore, I feel compelled to follow the law as the legislature gives it, particularly since it is so plainly written. And while the majority opinion is intimidating, I am reminded of the words of Francis Bacon, "Judges ought to remember that their office is *jus dicere,* and not *jus dare;* to interpret law, and not to make law, or give law."